BOYCE INDUSTRIES, INC., d/b/a Missouri Neon and Plastic Advertising Company, Appellant,

v.

MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Respondent.

No. WD34020.

Missouri Court of Appeals, Western District.

April 24, 1984.

Alex Bartlett, John S. Pletz, Bartlett, Venters & Pletz, Jefferson City, for appellant.

Bruce A. Ring, Chief Counsel, Dennis J. Redel, Asst. Chief Counsel, Missouri Highway and Transp. Com'n, Jefferson City, for respondent.

Before CLARK, P.J., and DIXON and NUGENT, JJ.

DIXON, Judge.

Boyce Industries, Inc., appeals the judgment of the circuit court affirming the decision of the Highway and Transportation Commission terminating the nonconforming status of two highway signs and requiring their removal without compensation.

Boyce asserts the Commission regulations relied upon for removal violate the statutory direction to limit regulations to those minimally necessary to prove compliance with federal law, that there is no statutory authority directing removal of the signs and that the challenged rule is arbitrary and capricious.

The two billboards are located in Taney and Greene counties and were erected prior to any regulation affecting billboards. The Greene County sign was damaged in a truck collision. The poles of the Taney County sign were cut by vandals. There is no dispute that both were nonconforming signs under the Billboard Act, §§ 226.500 to 226.600, RSMo 1978. In both instances Boyce, with knowledge of the existence of the Commission's regulation, replaced the original wood supporting poles with steel poles. The Commission, upon notice and hearing, ordered the signs removed without compensation, alleging a violation of 7 CSR 10–6.060(3)(B), which states:

Reasonable maintenance and repair of nonconforming signs is permissible. However, violation of any one or more of the following subsections (A) to (E) of this section (3) disqualifies any sign from being maintained as a nonconforming sign and subjects it to removal by the State Highway Commission without the payment of just compensation. When a sign is maintained in violation of any subsections (A) to (E), the district engineer shall issue a notice to terminate nonconforming sign to the signowner and owner of the real property on which the sign is located.

. . . . .

(B) Type of materials. The type of materials used in the construction of a sign shall not be changed after the date the sign becomes a nonconforming sign, except that a change of facing, panels, message or advertising does not constitute a change of type of materials.

This ruling of the Commission was upheld by the circuit court, which held that the foregoing rule was valid and enforceable.

Boyce first contends that the prohibition of 7 CSR 10–6.060(3)(B) against a change in the "type of materials" in a nonconforming sign is invalid. Boyce argues invalidity upon the premise that the language of § 226.530, "to promulgate only those rules and regulations of minimal necessity and consistent with customary use," limits the power of the Commission to issue only those rules minimally necessary to be in compliance with federal laws and applicable rules. In support of the argument, *Osage Outdoor Advertising, Inc., v. State Highway Commission*, 624 S.W.2d 535, 537 (Mo.App.1981), is cited for its language:

It is clear from §§ 226.500 to 226.600 that the legislature undertook to do the *bare minimum* by way of regulating the outdoor advertising which it could do and still not suffer the loss of federal highway funds. It is abundantly clear that the legislature did not intend for the Commission to make extensive rules and regulations and it specifically limited the Commission to making those rules and regulations of minimal necessity which would insure that Missouri would not suffer any loss of federal money. It is further clear from these sections that the legislature carefully specified those signs which could be removed with and without compensation.

(emphasis added) (footnote omitted). Boyce concedes that the Commission is required by federal regulation to make some lawful rule for reasonable repair and maintenance of nonconforming signs and cites 23 CFR § 750.707(d)(5):

*The [nonconforming] sign must remain substantially the same as it was on the effective date of the State law or regulations.* Reasonable repair and maintenance of the sign, including a change of advertising message, is not a change which would terminate nonconforming rights. *Each State shall develop its own criteria to determine when customary maintenance ceases and a substantial change has occurred which would terminate nonconforming rights.*

(emphasis added).

Boyce concludes that the federal rule does not require anything other than "some reasonable rule" and that the Commission was not required to go beyond the bare minimum by way of regulations con-

cerning maintenance of nonconforming signs.

This argument by Boyce assumes that the Commission is acting in a vacuum in its statutorily mandated role. This is not so. There is a well-developed body of precedent in this state concerning the regulation of nonconforming uses.

■■■ The federal regulation leaves to the states the task of adopting standards for the determination of reasonable repair and maintenance. Deference to state standards in the determination of the loss of the right of nonconforming use is compelled by state constitutional standards relating to the taking of private property. There are wide variances in the state laws construing and applying constitutional prohibitions against a taking of property without just compensation. *See Annot.*, 80 A.L.R.3d 630 (1977). A federal regulation that purported to vary state constitutional standards would raise serious constitutional questions. As a first principle, the federal rule does not require the enactment of regulations contrary to existing state doctrine in the application of Missouri Constitution Article I, § 10 and Article I, § 26. Missouri authority protects a preexisting use from a taking without compensation under the exercise of the police power. *Missouri Rock, Inc. v. Winholtz,* 614 S.W.2d 734 (Mo.App.1981). The protection afforded to a nonconforming use is not absolute and is subject to limitations as to the extension of the use, both in a functional and a temporal sense, and this is particularly true in cases involving billboards.

■■■ The Billboard Act is in essence a zoning of property adjacent to highways. *Mississippi State Highway Commission v. Roberts Enterprises,* 304 So.2d 637 (Miss. 1974). All zoning restrictions are required to exempt from their immediate operation existing nonconforming uses. *City of Monett, Barry County v. Buchanan,* 411 S.W.2d 108, 115 (Mo.1967). The intent of zoning restrictions is to decrease and diminish nonconforming uses in the public interest. *Hoffmann v. Kinealy,* 389 S.W.2d 745, 750 (Mo. banc 1965). Prohibi-

tions upon extensive reconstruction (75%) of a nonconforming use have been upheld. *City of Monett, supra.* Limitations upon changes prolonging the useful life of a nonconforming use have been sustained and violations of such limitations have been found to destroy the nonconforming use. *Brown v. Gambrel,* 358 Mo. 192, 213 S.W.2d 931 (1948); *Women's Christian Association of Kansas City v. Brown,* 354 Mo. 700, 190 S.W.2d 900 (1945). The primary purpose of the Billboard Act is to obtain removal of unlawful signs. *State ex rel. State Highway Commission v. Heil,* 597 S.W.2d 257 (Mo.App.1980). In *University City v. Diveley Auto Body Co.,* 417 S.W.2d 107 (Mo. banc 1967), a regulation that drastically regulated the number and size of nonconforming signs after a three year amortization period was upheld.

When the foregoing precedent is considered as establishing the maximum regulation that would be upheld in any regulation of billboards, the Commission's less rigorous standards may be considered as minimal. Undoubtedly, the federal authorities will look to the maximum regulation available to determine if the regulations under the Billboard Act are "reasonable." It is unlikely that any less rigorous regulation would be sufficient to satisfy the cited federal regulation as being reasonable.

The portion of the federal regulations cited by Boyce is not the only provision relating to the issue of maintenance of a sign as a nonconforming use. The signs in the instant case are nonconforming because § 226.560 excepted preexistent signs from the operation of the Billboard Act. This statute, a grandfather clause, is authorized by 23 CFR § 750.707(c), which limits the existence of such signs with the following language:

> This clause only allows an individual sign at its particular location for the duration of its normal life subject to customary maintenance.

In order to maintain and continue a nonconforming sign, 23 CFR § 750.705(d)(4) provides "The sign must have been lawful on the effective date of the State law or regu-

lations, and must continue to be lawfully maintained." Under 23 CFR § 750.705(d) states must remove illegal signs expeditiously and 23 CFR § 750.705(i) requires that an inspection and removal program be provided. Illegality includes maintenance in violation of state maintenance standards. 23 CFR § 750.703(e).

■ When these additional regulations are considered as illustrative of the type of regulation which will be considered as reasonable with respect to repair and maintenance, the Commission's rule must be considered as the minimum to achieve compliance. This is particularly true since nonconforming signs *"must remain substantially the same."* 23 CFR § 750.707(d)(5). A failure to properly regulate nonconforming signs in accordance with the federal regulations cited would violate the legislative direction under which the Commission issued its regulations.

Boyce further argues that the Commission does not have the statutory power to provide by regulation for termination of the nonconforming use. The short answer to that contention is found in *State ex rel. National Advertising Co. v. State Highway Commission,* 624 S.W.2d 453 (Mo. App.1981), which held that a violation of regulations concerning maintenance of a nonconforming billboard renders the structure unlawful and authorizes removal. To the same effect is *Superior Outdoor Advertising v. State Highway Commission,* 641 S.W.2d 480 (Mo.App.1982), which authorized removal of a nonconforming sign upon reduction in size of the billboard, a violation of the same regulation here considered.

Neither of these cases discuss the specific attack by Boyce that only § 226.580 gives specific authority for removal of signs without compensation. Boyce continues by asserting that a nonconforming sign in violation of the repair regulations is not referred to in § 226.580 and thus removal for such a violation is not within the Commission's statutory powers.

The Commission's answer is cogent:

Under 23 C.F.R. § 750.705(d) states must "remove illegal signs expeditiously," and under subsection (i) states must "establish enforcement procedures to discover illegally erected *or maintained* signs shortly after such occurrence and cause their prompt removal" (emphasis added). "Illegal sign" is defined at 23 C.F.R. § 750.703(e) as "one which was erected *or maintained* in violation of state law or local law or ordinance" (emphasis added). State law is defined at 23 C.F.R. § 750.703(j) to include state regulations. Therefore, under federal regulations, signs which violate maintenance provisions of state rules must be removed as illegal signs. This means removal without compensation.

■ The Commission's argument is the obverse of the holding in *Osage Outdoor Advertising, supra.* While *Osage* struck down a regulation not required by the federal law, it emphasized the legislative intent to require every thing necessary to obtain the federal funding. Unlike *Osage,* the failure in the instant case to remove the sign would place federal funds in jeopardy, contrary to the expressed intent to comply with federal law. As the Commission points out, when the legislative mandate requires compliance with federal law or regulation, even positive and affirmative propositions of state law must yield if in conflict with the applicable federal law. *State ex rel. Weatherby v. Conley,* 527 S.W.2d 334 (Mo. banc 1975). In the instant case, the authority to remove without compensation must arise from the specific direction to comply with the federal law.

■ The argument is made that the regulation is void as being arbitrary, capricious, and violative of the due process clauses of the state and federal constitutions. As elucidated, the regulation is not the limit constitutionally that Missouri precedent permits. *Diveley, supra; Women's Christian Association, supra.* The legislatively mandated reason for the rule and the minimal nature of the regulation

when compared with the constitutional limits divest Boyce's claim of any validity.

The judgment is affirmed.

All concur.