**OSAGE OUTDOOR ADVERTISING, INC., Appellant,**

v.

**STATE HIGHWAY COMMISSION OF MISSOURI, Respondent.**

**No. WD 35357.**

Missouri Court of Appeals,
Western District.

Dec. 26, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 5, 1985.

Application to Transfer Denied April 30, 1985.

Alex Bartlett, Bartlett, Venters, Pletz & Toppins, Jefferson City, for appellant.

Bruce A. Ring, Chief Counsel, Dennis J. Redel, Asst. Counsel, Missouri Highway and Transp. Com'n, Jefferson City, for respondent.

Before CLARK, P.J., and NUGENT and LOWENSTEIN, JJ.

CLARK, Presiding Judge.

Osage Outdoor Advertising, Inc. appeals, in this consolidated proceeding, the circuit court judgments which affirmed decisions by the Highway and Transportation Commission ordering the uncompensated removal in four separate cases of signs maintained by Osage. In common with a number of prior cases, many of which involved this appellant, the question in each case is the lawfulness of the commission's removal orders.

## BOONE COUNTY SIGN

The subject sign was first erected in December, 1967 on four support poles with a sign surface of 300 square feet. Between April 12, 1972 and March 20, 1973, the sign was partially reconstructed by addition of one more support pole and 60 square feet of sign area. In May, 1974, the Commission notified Osage that the sign was to be removed. Although such notices usually rely on one of the specified removal causes set out in § 226.580, RSMo 1978,[1] the notice in this case showed the cause for removal to be the enlargement of a previously licensed sign. Osage contends the removal notice was invalid because it cited no cause listed in § 226.580.

■ The prohibition against enlargement of non-conforming signs is found in 7 CSR 10–6.060(3)(c), and it is undisputed that the Boone County sign was in violation of that regulation. In *Boyce Industries Inc. v. Missouri Highway and Transportation Commission,* 670 S.W.2d 147 (Mo.App. 1984), the court denied a contention that removal of a sign could not be ordered on the ground of a change in materials prohibited under 7 CSR 10–6.060(3)(B), despite the absence of such cause for removal in the listing of § 226.580. The regulations, required by federal law to obtain federal funding, are authorized by § 226.530 and are enforceable as law if the regulations are of minimum necessity.

■ Osage recently posed the same question in an appeal to this court from a removal order based on sign location. We there held the Commission was not limited in uncompensated sign removal orders to signs violating only the conditions listed in § 226.580. This case is another facet of the same argument and is controlled by the analysis in *Osage Outdoor Advertising, Inc. v. Missouri Highway and Transportation Commission,* 680 S.W.2d 162 (Mo. App.1984), as modified October 30, 1984 and by *Boyce, supra.* The order for re-

moval of the Boone County sign was lawful.

## LACLEDE COUNTY SIGN

This sign dates from 1961 at a location now adjacent to Interstate Highway 44 in an unincorporated area not subject to county zoning. In 1972, the sign was damaged in a storm to the extent that the only remaining structure was two upright posts connected by one cross member. Osage undertook what purported to be repair of the storm damage, but in the process, enlarged the surface area of the sign to a size more than two-thirds larger than that which had existed before the storm. The Commission determined that the extent of repair had been such as to amount to the erection of a new sign and, because the sign was in violation of the location provisions of §§ 226.520 and 226.540, it was ordered removed.

■ Osage initially challenges the factual determination that the repairs in this instance amounted to the erection of a new sign. The function of determining such facts rests in the first instance with the administrative agency. Judicial review of the agency's findings of fact is limited to determining whether the decision is supported by competent and substantial evidence on the whole record and, if the evidence would warrant either of two opposed findings, an appellate court must uphold the factual determination the agency has made. *Overland Outdoor Advertising Co., Inc. v. Missouri State Highway Commission,* 616 S.W.2d 563 (Mo.App.1981).

■ A case similar to this on the facts is *State ex rel. National Advertising Co. v. State Highway Commission,* 624 S.W.2d 453 (Mo.App.1981). There, all that remained of the previous sign before repairs were undertaken was a single support pole. The company replaced the advertising panels and the support members and such was held to constitute competent and substan-

---

1. All citations are to RSMo 1978 and to the predecessor of each as current on the dates in question.

tial evidence supporting a finding by the commission that the repairs constituted construction of a new sign. In this case, the extent of repair was comparable in terms of the quantity of new material required to restore the sign and, in addition, the sign in the subject case was substantially enlarged. The Commission properly exercised its authority to order the uncompensated removal of the sign as a new sign unlawfully located. *Independent Stave Co. v. State Highway Commission,* 625 S.W.2d 246 (Mo.App.1981).

Osage alternatively argues that this sign was not erected after Senate Bill 382 became effective in 1972 because, they contend, the emergency clause was not effective. Absent emergency advancement of the date for the statute, the repairs to the Laclede County sign were accomplished before the normal effective date, ninety days after the adjournment of the General Assembly, and Senate Bill 382 does not apply.

The statute in question was enacted under an emergency clause which explained: "Because it is imperative that Missouri meet certain federal requirements, and because Missouri will not be able to participate in certain federal programs until additional legislation is adopted, and because this bill will make it possible to meet those requirements, this act is deemed necessary for the immediate preservation of the public health, welfare, peace and safety, and is hereby declared to be an emergency act within the meaning of the constitution, and this act shall be in full force and effect upon passage and approval." Laws of Mo. 1972 p. 863.

■ Appellant did not question the effect of the emergency clause or raise any issue in this regard in proceedings before the Commission or the trial court. By failing to raise this issue at its first opportunity, Osage has waived its right to raise the issue for the first time on appeal. *Mills v. Federal Soldiers Home,* 549 S.W.2d 862, 868 (Mo. banc 1977). However, assuming the point may be properly addressed, we hold the emergency clause was effective.

Affixing an emergency clause to a statute does not, of itself, make it an emergency measure within the meaning of the law. *Hatfield v. Meers,* 402 S.W.2d 35 (Mo.App. 1966). The legislative declaration of an act to be an emergency measure is entitled to great weight but is not conclusive, because the courts possess the final authority to determine whether an emergency in fact exists. *Padberg v. Roos,* 404 S.W.2d 161, 170 (Mo. banc 1966). The test of whether an emergency exists is whether the factual situation is such that there is actually a crisis or emergency which requires immediate action for the preservation of the public peace, property, health, safety or morals. *State ex rel. Tyler v. Davis,* 443 S.W.2d 625, 631 (Mo. banc 1969). *See also State ex rel. State Highway Comm'n v. Thompson,* 19 S.W.2d 642 (Mo. banc 1929).

■ This is such a case. After the federal Highway Beautification Act of 1965 was originally enacted, the Missouri legislature passed the first comprehensive outdoor advertising control law, S.B.8, effective January 1, 1968. Pursuant to the federal statute, the state was required to effectively regulate the outdoor advertising structures or be penalized 10% of their federal highway appropriation. Nevertheless, the enforcement of the Missouri law was lax and no comprehensive program was effectuated.

On February 10, 1972 the 10% penalty was imposed by the United States Secretary of Transportation against the state for failure of S.B.8 to provide the "effective control" required. Subsequently, the Secretary agreed to suspend the penalty if Missouri would agree to Federal Highway Administration guidelines for effective control and implement the regulations by legislation before March 31, 1972. *National Advertising Co. v. State Highway Comm'n,* 549 S.W.2d 536 (Mo.App.1977). The legislature immediately passed the required provisions effective March 30, 1972.

This sequence of events demonstrates the necessity for immediate action by the legislature and prompt enactment of the law. Before February 10, 1972, the legisla-

ture could rely upon S.B.8, the 1968 law, for compliance with the federal mandate. Thereafter it became necessary to pass new legislation effective before March 31, 1972 to avoid the loss of federal funds. That result could only be accomplished by use of an emergency clause.

The facts here support the legislative declaration that this bill truly was an emergency measure. The law was effective March 30, 1972 and appellants contention otherwise is meritless.

## BUCHANAN COUNTY SIGN

At a date after March 30, 1972, this sign was erected pursuant to a permit issued by the Buchanan County Zoning Commission. The site bears an agricultural zoning imposed by the county. The site is also within 660 feet of an interstate highway and thus was in violation of the location provisions of §§ 226.520 and 226.540. The removal order was issued accordingly.

Osage contends the sign is lawful because it was erected under authority of the permit issued by Buchanan County. For this proposition, Osage relies on § 226.-520.3 and *State ex rel. Missouri Highway and Transportation Commission v. Bank of St. Ann*, 631 S.W.2d 73 (Mo.App.1982).

Section 226.520.3 was recently interpreted in the case of *Superior Outdoor Advertising Co. v. State Highway Commission*, 641 S.W.2d 480 (Mo.App.1982) upon circumstances in Greene County identical to the facts here. The court there said:

> "Although the statute permits the local zoning authority to enact reasonable regulations with respect to certain features of signs located within the area of the local zoning authority, those regulations are 'in addition' to the regulations prescribed by the state and set forth in the Billboards Act. As a matter of sovereignty the county may not permit that which the state forbids." *Id.* at 485.

A more recent case from this court, *Stephenson's Restaurants, Inc. v. Missouri State Highway and Transportation Commission*, 666 S.W.2d 437 (Mo.App.1984), adopted a like position. The Stephenson sign violated the spacing requirements of § 226.540.3(a) because it was within 250 feet of a pre-existing sign and it was ordered removed. The owner argued the sign was not unlawful because Stephenson's had secured a permit for the sign from Kansas City under authority of the city sign ordinance. The court held that the state spacing requirement must prevail over the less restrictive city permit conditions.

It must be conceded that the last cited cases, *Superior Outdoor* and *Stephenson's*, are in conflict with the *Bank of St. Ann* case on which Osage relies. The *Bank of St. Ann* case was a condemnation action and the question was whether evidence of the value of the sign located on the property taken should have been excluded on the basis that the sign was within 660 feet of an interstate highway and unlawful under the billboards law. The court there relied on the city issued special use permit to hold that the sign was not illegal because it was maintained under "other authority of law" defined in § 226.-520.3.

The *Bank of St. Ann* case appears to stand alone and we decline to follow it. The more recent cases from this district and from the Southern District are squarely in point and conform to the general rationale of cases applying the Missouri Billboard Act. The Buchanan County sign was properly ordered removed.

## CLINTON COUNTY SIGN

The history of this sign appears to have commenced before 1968 when it was owned by Lent Advertising. Osage acquired the sign in 1968 at which time the boards advertised the Sheraton-Elms. Sometime later, probably in 1971 or early 1972, the face of the sign was taken off and the ground owner removed all but two or three of the support poles. A permit application by Osage was rejected December 19, 1972 because no advertising message was on the sign. Subsequently, an advertisement for Worlds of Fun was placed on the sign.

This case involves points previously addressed in the cases of the Laclede and Buchanan County signs. As to the ques-

tion of repair or reconstruction, the Commission rejected Osage's claim that the sign was not erected after March 30, 1972, but was merely repaired. The extent of prior demolition of the original Lent Advertising sign and the reconstruction were comparable to the facts as related in the Laclede County sign case. Here, too, there was substantial and competent evidence to support the Commission's finding of fact that the sign was a new sign erected after March 30, 1972.

The second point here, as advanced in the case of the Buchanan County sign, is that Osage claims lawful entitlement to maintain the sign under authority of the local zoning ordinances of Clinton County. The sign was, however, within 660 feet of an interstate highway and unlawful as to its location. On the same grounds discussed in the case of the Buchanan County sign, the statute prevails over the local ordinance and the sign must be removed.

The judgment of the circuit court affirming the order of the Highway and Transportation Commission for uncompensated removal of the four signs is affirmed.

All concur.