**INDEPENDENT STAVE CO., INC., Appellant,**

v.

**MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Respondent.**

No. 15226.

Missouri Court of Appeals,
Southern District,
Division One.

March 16, 1988.

Motion for Rehearing or Transfer Denied April 7, 1988.

Application to Transfer Denied May 17, 1988.

a final decision and order of the Missouri Highway and Transportation Commission ("Commission") commanding Independent to remove two outdoor advertising signs, one in Callaway County and one in Boone County.

### Callaway County sign

Erected in December, 1971, the sign was then lawful per § 226.540(4), RSMo 1969, as it was within 1,000 feet of a commercial activity. On March 30, 1972, S.C.S.S.B. 382, Laws 1972, pp. 856–63, took effect. It amended § 226.540(4) by allowing signs on unzoned commercial and industrial land only if they were located within 600 feet of a commercial or industrial activity.

On April 19, 1972, Independent applied to the Commission for a permit to maintain the sign. The Commission granted the permit; Independent paid all required biennial inspection fees thereafter.

In July, 1980, a panel was added to the top of the sign, increasing its size by 224 square feet.

On March 22, 1982, the Commission's district engineer issued a notice to Independent that the sign had lost its nonconforming status [1] because the change in size was prohibited by 7 CSR 10–6.060(3)(C).[2] The notice stated that failure by Independent to either remove the sign or request administrative review within 30 days after receipt of the notice would result in the sign being removed by the Commission, and that Independent would be liable to the Commission for the removal cost.

Independent requested administrative review, and a hearing was held before a hearing examiner of the Commission. At the hearing, the parties stipulated: "The sign is not located within 600 feet of the commercial or industrial activity."

The Commission thereafter issued its final decision and order wherein the Commission concluded, among other things:

David E. Wilhite, Donnelly, Baldwin and Wilhite, Lebanon, for appellant.

Rich Tiemeyer, Rodney D. Gray, Jefferson City, for respondent.

CROW, Chief Judge.

Independent Stave Co., Inc., ("Independent") appeals from a judgment affirming

---

1. 7 CSR 10–6.015(14) provides:

    " 'Nonconforming sign' ... means a sign which was lawfully erected but which does not conform to the requirements of state statutes enacted at a later date...."

2. 7 CSR 10–6.060(3)(C) provides:

    "The size or area of a sign shall not be increased or decreased after the date the sign becomes a nonconforming sign."

"The sign is visible from the main traveled way and is located within 660 feet of the right-of-way of Interstate 70 which is a part of the interstate highway system....

....

... Callaway County does not have comprehensive zoning ordinances.... The sign is not located within any incorporated municipality....

....

Signs erected or maintained after March 30, 1972, within 660 feet of the nearest edge of the right-of-way of a primary or interstate highway are regulated and limited to: ... (4) Signs located within 600 feet of an unzoned commercial or industrial establishment when located in a county without zoning regulations; and (5) Nonconforming signs....

... we conclude the sign was a lawful nonconforming sign before July, 1980, but was increased in size in July, 1980 in violation of 7 CSR 10–6.060(3)(C)....

... the ... District Engineer properly issued the notice to terminate nonconforming sign."

While the case reaches us by appeal from the judgment of the circuit court, we review the Commission's findings and order, not the circuit court's judgment. *Hulshof v. Missouri Highway and Transportation Commission*, 737 S.W.2d 726, 727 (Mo. banc 1987).

Independent's first assignment of error has two components, which we shall consider separately. The first component avers that the Commission was wrong in concluding that the sign's legal nonconforming status was lost when the sign was enlarged. Independent contends that at the time of enlargement (July, 1980), the sign was within 600 feet of a commercial activity, and consequently was not a nonconforming sign.

At the hearing conducted by the Commission's hearing examiner, the parties stipulated that from the time the sign was erected in 1971 until it was enlarged in 1980, it measured 16 feet by 40 feet. According to our calculations, those dimensions produce an area of 640 square feet. The enlarge-

ment, it will be recalled, added 224 square feet, making a total area of 864 square feet.

Fred Willhaus, an official of Independent, testified before the hearing examiner that at the time the sign was erected, the land where it sits was owned by one John Propst. At such time, said Willhaus, Propst was operating "some type of a gift-type business" within 1,000 feet of the sign. Willhaus added that Propst continued to do so until he sold the land to one James Goodwin in January, 1981. After the sale, according to Willhaus, Propst's commercial activity ceased. On cross-examination by the Commission's counsel, we find this:

"Q ... do you know approximately how far this [commercial] activity is from the subject sign or was I should say?

A Within 600 feet, I believe. I'm not sure of the exact distance.

Q Did you ever measure the distance?

A No, I never have.

Q And you say it's not now in existence, the activity?

A No."

Independent, in support of the first component of its first assignment of error, refers us to §§ 226.520 and 226.540, RSMo 1978. Section 226.520 provided, in pertinent part:

"On and after March 30, 1972, no outdoor advertising shall be erected or maintained within six hundred sixty feet of the nearest edge of the right-of-way and visible from the main traveled way of any highway which is a part of the interstate ... system in this state except the following:

....

(4) Outdoor advertising located in unzoned commercial or industrial areas as defined and determined pursuant to sections 226.500 to 226.600;

...."

Section 226.540 provided, in pertinent part:

"Notwithstanding any other provisions of sections 226.500 to 226.600, outdoor advertising shall be permitted within six

hundred and sixty feet of the nearest edge of the right-of-way of any interstate ... highway in ... unzoned commercial and industrial areas as hereafter defined, subject to the following regulations which are consistent with customary use in this state:

. . . .

(2) Size of signs:

(a) The maximum area for any one sign shall be one thousand two hundred square feet....

. . . .

(4) As used herein, the words '**unzoned commercial and industrial land'** shall be defined as follows: That area not zoned by state or local law or ordinance and ... on which a commercial or industrial activity is actually conducted ... together with the area along the highway extending outwardly six hundred feet from and beyond the edge of such activity."

Independent maintains that inasmuch as the testimony of Willhaus established that the sign was located within 600 feet of Propst's commercial activity at the time the sign was enlarged in 1980, the sign was not a nonconforming sign at said time and therefore there was no bar against enlarging it, so long as its size after enlargement did not exceed the 1,200 square foot limit of § 226.540(2)(a), *supra.*

The Commission responds that there was no credible evidence that the sign was ever located within 600 feet of a commercial activity, as Willhaus conceded he had never measured the distance between the sign and the site of Propst's former commercial activity. Furthermore, argues the Commission, Independent stipulated before the hearing examiner that the sign was not located within 600 feet of a commercial or industrial activity.

Independent, in its reply brief, asserts that the stipulation referred to the status of the commercial activity at the time of the *hearing,*[3] not at the time the sign was *enlarged.*

The Commission, in its final decision and order, found that the sign is not located within 600 feet of a commercial or industrial activity, but made no finding as to whether the sign was located within 600 feet of such an activity when it was enlarged in 1980. It thus appeared to us upon preliminary consideration that the final decision and order of the Commission lacked a finding on a crucial fact question, and that remand to the Commission for a finding on such issue would be required. On reflection, however, we have concluded that remand for such purpose is unnecessary, as we are of the opinion that Independent is foreclosed from asserting, in this appeal, the first component of its first point.

■ As reported earlier, the Commission's notice of removal informed Independent that the sign had lost its nonconforming status because of the enlargement. Independent, in its application to the Commission for administrative review, pled that the notice was "without legal force or effect" for 10 different reasons, none of which bore any resemblance to the first component of Independent's first point on appeal. Nothing in the record of the proceeding before the hearing examiner suggests that Independent was contending the sign was not a nonconforming sign when it was enlarged in July, 1980, thus the absence of a finding by the Commission as to whether the sign was situated within 600 feet of the site of Propst's former commercial activity is not surprising, particularly in view of Independent's stipulation that the sign was not located within 600 feet of a commercial or industrial activity. Indeed, Willhaus' testimony as to whether the sign was within 600 feet of the site of Propst's former commercial activity—the testimony upon which Independent bases the first component of its first point—was elicited by the Commission's counsel, not by Independent's counsel.

Additionally, Independent's petition for review in the circuit court made no mention

---

**3.** The hearing took place August 11, 1982.

of the first component of Independent's first point on this appeal.

In *Osage Outdoor Advertising, Inc. v. State Highway Commission,* 687 S.W.2d 566 (Mo.App.1984), a sign owner asserted in the appellate court that the emergency clause in a legislative enactment was ineffective. The appellate court said:

"[The sign owner] did not question the effect of the emergency clause or raise any issue in this regard in proceedings before the Commission or the trial court. By failing to raise this issue at its first opportunity, [the sign owner] has waived its right to raise the issue for the first time on appeal. *Mills v. Federal Soldiers Home,* 549 S.W.2d 862, 868 (Mo. banc 1977)." *Osage,* 687 S.W.2d at 569[5].

In *Mills,* cited in the above passage from *Osage,* an employee of the Federal Soldiers Home, a state agency, was dismissed from his job. On review by the Personnel Advisory Board, the dismissal was upheld. The employee then petitioned the circuit court for review per §§ 536.100–.140, RSMo 1969. The circuit court held that the Soldiers Home failed to comply with a statutory requirement regarding the notice of dismissal. For that reason, the circuit court reversed the decision of the Board and remanded with directions to reinstate the employee. The Supreme Court of Missouri reversed the circuit court, saying:

"... there is another and perhaps more important reason why the trial court erred in reversing the decision of the Personnel Advisory Board. The [employee] ... made no contention before the board that the notice of dismissal was in any respect insufficient in service, content, or timeliness. The hearing before the board proceeded on the basis that the procedural provisions ... with respect to notice were not being contested.

....

If [the employee] had raised the question of the sufficiency of the notice before the Personnel Advisory Board, one of two things could have then occurred. The Soldiers Home could have introduced further evidence on the matter and even called the employee as a witness to testify on the point. If the board then found that the notice provision ... had not been complied with, it would have reversed the discharge and the Soldiers Home could have begun the procedure for discharge anew. If the board found the statute had been complied with, it would have overruled the employee's objection to that matter and the issue would have been preserved for review in circuit court. In either event, the point would have been raised at the appropriate time and at a time when the defect, if any, could have been considered by the appropriate agency—the Personnel Advisory Board.

The general rule is that a court should not set aside administrative actions unless the agency has been given a prior opportunity, on timely request by the complainant, to consider the point at issue." *Mills,* 549 S.W.2d at 867–68.

The Supreme Court in *Mills* noted there may be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below. *Id.* at 868. In the instant case, however, the first component of Independent's first point does not present a question of law, but instead raises an issue of fact that was not raised by Independent before the Commission. On the authority of *Osage,* 687 S.W.2d 566, and *Mills,* 549 S.W.2d 862, we hold that Independent may not, in this appeal, assert, for the first time, the first component in its first assignment of error.

■ The second component of Independent's first assignment of error is that the 1980 enlargement was not a substantial change so as to cause the sign to lose its alleged nonconforming status and the enlargement was removed as soon as Inde-

pendent received notice of the alleged violation.

In support of its contention that the enlargement was not a substantial change, Independent cites 23 C.F.R. § 750.707(d)(5) (1987), which provides:

"The sign must remain substantially the same as it was on the effective date of the State law or regulations. Reasonable repair and maintenance of the sign, including a change of advertising message, is not a change which would terminate nonconforming rights. Each State shall develop its own criteria to determine when customary maintenance ceases and a substantial change has occurred which would terminate nonconforming rights."

In the instant case, Independent increased the size of the sign by 35 per cent. Independent cites no case holding that a sign increased in size to that extent remains "substantially the same as it was." The contention is without merit.

■ Independent's assertion that the enlargement was removed as soon as Independent received notice of the violation [4] is an effort by Independent to bring itself within the holding of *Boyce Industries, Inc. v. Missouri Highway and Transportation Commission*, 693 S.W.2d 293 (Mo. App.1985). There, the facing of a nonconforming sign was blown off by a storm. A repair crew replaced the facing with panels of the standard size and number used for most of the owner's signs. The new panels increased the size of the sign from 192 square feet to 240 square feet. Within 30 days after the owner received notice to remove the sign, it reduced the sign to its original size. Reversing a circuit court judgment upholding the Commission's removal order, the appellate court emphasized that the increase in size was due to inadvertence or mistake and was immediately corrected upon notice of the error. *Id.* at 295.

In *Hulshof*, 737 S.W.2d 726, the owner of a nonconforming sign leased it to a party who increased its size from 128 square feet to 240 square feet. The Commission notified the owner to remove the sign. Citing *Boyce*, the owner argued he should have been permitted to reduce the sign to its original size instead of removing it. Rejecting that contention, the Supreme Court said that the enlargement was not inadvertent, as it was the result of a deliberate choice by the lessee of the sign to increase its size, not a mistake by a repair crew. *Hulshof*, 737 S.W.2d at 727–28. The Supreme Court added:

"*Boyce* is, therefore, inapplicable and must not be construed as authority for the proposition that sign owners may avoid the consequences of violating billboard regulations by claiming ignorance of the infraction nor is it to be considered controlling except with the 'facts and circumstances of [that] case.'" *Hulshof*, 737 S.W.2d at 728.

In the instant case, Independent maintains that the change in the size of its sign was made by "mistake," as Independent was unaware of the prohibition against enlarging a nonconforming sign. The futility of that contention is established by the above excerpt from *Hulshof*. The second component of Independent's first assignment of error is denied.

■ Independent's second assignment of error avers that the Commission's final decision and order was improper in that the owner of the land on which the sign sits was not served with the notice to terminate the sign as required by § 226.580.3, RSMo 1978, and was not served with notice of the hearing as required by § 536.067(3), RSMo 1978.

The evidentiary basis for this contention is Willhaus' testimony that Propst, who owned the land at the time the sign was erected, sold the land to Goodwin in January, 1981. Asked how he learned of this,

---

4. Willhaus testified before the hearing examiner that the panel added to the sign in 1980 was removed April 9, 1982. That testimony was uncontradicted.

Willhaus replied he was told by Propst on the morning of the hearing.

The notice to terminate the nonconforming sign was mailed to Independent March 22, 1982. It identified Propst as the owner of the land. Almost five months elapsed between the date the notice was mailed and the date of the hearing. At no time during that interval did Independent complain to the Commission that notice had not been served on the landowner.

The notice of hearing was mailed by the Commission to Independent and Propst April 26, 1982. Some three and a half months elapsed between the date such notice was mailed and the date of the hearing. At no time during that interval did Independent complain to the Commission that notice had not been served on the landowner.

At the hearing, Independent voiced no protest about lack of notice to the landowner. Furthermore, Independent's petition for review in the circuit court said nothing about absence of notice to the landowner.

For the reasons set forth in our discussion of the first component of Independent's first assignment of error, we hold on the authority of *Osage*, 687 S.W.2d 566, and *Mills*, 549 S.W.2d 862, that Independent may not, in this appeal, assert, for the first time, its second assignment of error.

■ Even if Independent could do so, the point would be unavailing. In *Superior Outdoor Advertising Co. v. State Highway Commission of Missouri*, 641 S.W.2d 480 (Mo.App.1982), the Commission's notice to remove a sign was sent to a landowner by registered mail. The receipt was signed by a third person who identified himself as the authorized agent of the addressee. The landowner did not appear at the administrative hearing, but the sign owner did appear and actively contested the case. On appeal from a circuit court judgment up-

holding the Commission's order to remove the sign, the sign owner argued that inasmuch as there was no evidence that the person signing the receipt for the landowner was the latter's authorized agent, the Commission acted in excess of its statutory authority in ordering the sign removed.

The appellate court, emphasizing that the sign owner made no claim that the absence of the landowner hampered the sign owner in the latter's effort to litigate the issues, held that the latter had no standing to challenge the sufficiency of the service on the landowner. *Id.* at 483.

In the instant case, Independent makes no claim that the absence of Goodwin, the alleged present landowner, adversely affected Independent's ability to litigate the issues regarding removal of the sign. Consequently, Independent's second point, even if cognizable, would be meritless.

Independent assigns no further error regarding the Callaway County sign. An order compelling removal of a nonconforming sign because it was enlarged in violation of 7 CSR 10–6.060(3)(C)[5] is lawful. *Osage*, 687 S.W.2d at 568. The circuit court did not err in affirming the Commission's order requiring Independent to remove the Callaway County sign.

### Boone County sign

Erected in 1982, the sign is located in the City of Columbia, an incorporated municipality comprehensively zoned. The sign was erected on land zoned "R–1, One Family Dwelling District," pursuant to a permit issued by the City. Independent made no application to the Commission for a permit.

When the sign was erected, it was attached to an existing sign owned by a party other than Independent. The resulting structure is characterized by Independent as a "V-type sign."[6] It is within 660 feet of the nearest edge of the right-of-way and

5. Footnote 2, *supra.*

6. 7 CSR 10–6.040(4) provides:

"A ... V-type sign is a sign with two sides or outdoor advertising faces which are physically contiguous, or connected by the same struc-

visible from the main traveled way of Interstate 70, a part of the interstate highway system.

The Commission, in its final decision and order, concluded that the sign was subject to removal per § 226.580, RSMo 1978, which provided, in pertinent part:

"1. The following outdoor advertising within six hundred sixty feet of the right-of-way of interstate or primary highways is deemed unlawful and shall be subject to removal:

(1) Signs erected after March 30, 1972, contrary to the provisions of sections 226.500 to 226.600; ...."

The Commission determined that the sign was erected contrary to the provisions of §§ 226.500 to 226.600, as there was no provision in any of those sections allowing the sign to be erected in the location where it was placed.

Independent presents one assignment of error, asserting: "... the sign ... constitutes a V-type sign as defined by 7 CSR 10–6.040(4)[7] and as such does not violate the location requirements of the [pertinent statutes] and by virtue of being classified as a part of the previously erected sign cannot properly be considered a new sign erected after March 30, 1972."

In support of that hypothesis, Independent maintains that under 7 CSR 10–6.040(4), the entire structure of a V-type sign is to be considered as one sign for the purpose of determining whether it complies with the spacing and location requirements of § 226.540. That being so, says Independent, its sign "acquired the same status" as the existing sign to which it was attached. Consequently, according to Independent, its sign "cannot be deemed to be a sign erected after March 30, 1972."

Our initial observation is that nothing in the record indicates that the sign to which

Independent's sign was attached was erected prior to March 30, 1972. However, even if we assume it was, 7 CSR 10–6.040(4) supplies Independent no basis for relief. At the outset of the regulation, we find this:

"PURPOSE: This rule supplements the requirements for erection and maintenance of outdoor advertising in zoned and unzoned commercial and industrial areas authorized by section 226.520(3) and (4) RSMo."

As Independent's sign was erected on land zoned residential, the regulation, by its own terms, does not apply.

More importantly, however, nothing in 7 CSR 10–6.040(4) suggests that the Commission, in adopting it, intended that if a new sign were attached to an existing nonconforming sign so as to form a V-type sign, the new sign was to be treated as if it had been erected at the same time as the nonconforming sign, thereby rendering the new sign immune from removal. The regulation pertains only to size, lighting, spacing and location requirements of multiple sign structures under § 226.540. It does not address the subject of signs lawfully erected prior to March 30, 1972, which became nonconforming by reason of the 1972 legislation referred to in the second paragraph of this opinion. Independent's contention that the sign is to be treated as if it were erected prior to March 30, 1972, is denied.

Independent, as we understand its brief, does not assert that the sign permit issued by the City of Columbia bars the Commission from ordering the sign removed. If, however, Independent did intend to make that argument, it would be unsuccessful. *Stephenson's Restaurants, Inc. v. Missouri State Highway and Transportation Commission*, 666 S.W.2d 437, 440–43 (Mo. App.1984); *Superior Outdoor Advertising*, 641 S.W.2d at 484–85[5].

ture or cross bracing.... Each side or face is limited to not more than two (2) displays. Both sides or faces of such a multiple sign structure shall be considered as one sign for the purpose of determining whether or not it complies with the sizing, lighting, spacing and location requirements of section 226.540

RSMo provided that each face or side of a multiple sign structure is limited to a total of twelve hundred (1200) square feet in area...."

7. Footnote 6, *supra*.

One final item remains. On January 11, 1988, two weeks after the Commission had filed its brief, Independent filed a motion to supplement the record on appeal or in the alternative for remand to the Commission for rehearing to permit the reception of "newly discovered evidence." That evidence, according to Independent, was a change in the zoning ordinance of the City of Columbia whereby the site of the sign became zoned "commercial" on January 1, 1986, some three years and four months after the hearing conducted by the hearing examiner.

Independent's motion is governed by *Overland Outdoor Advertising Co., Inc. v. Missouri State Highway Commission*, 616 S.W.2d 563 (Mo.App.1981). There, a sign owner moved the appellate court for consideration of alleged newly discovered evidence, the substance of which was that a preexisting sign which was essential to the offense of the subject sign had been removed after the Commission's hearing, thus eliminating the factual basis for the violation. Rejecting the motion, the opinion said:

> "The decision we review is that made by the Commission on the evidence before it. The later removal of the sign was not a fact which the Commission could have considered and it therefore can have no bearing on whether the decision of the Commission was appropriate on the evidence it had. Moreover, subsequent events would be irrelevant as to the issue of illegality of the sign at the time it was ordered removed. There is no provision in the billboard law for remedial action or rehabilitative consequences beyond thirty days from the date of notice to remove." *Id.* at 567.

Independent's motion is denied, and the judgment of the circuit court upholding the Commission's final decision and order regarding both signs is affirmed.

GREENE, P.J., and HOLSTEIN, J., concur.