Dr. Robert E. Bartman Commissioner of Education Department of Elementary and Secondary Education P.O. Box 480 Jefferson City, Missouri 65102-0480
Dear Dr. Bartman:
This opinion is in response to your questions concerning Senate Bill No. 301, 88th General Assembly, First Regular Session (1995) (hereinafter "Senate Bill No. 301"). Your questions are essentially as follows:
 1. Should grants distributed pursuant to Sections 360.111 to 360.118, RSMo Supp. 1995, be available for new money bonds issued before the effective date of Senate Bill No. 301?
 2. If the answer to Question 1 is "Yes," are refunding bonds closed prior to 1995 entitled to such a grant (i.e., those issued and closed 1992, etc.)?
 3. If the answer to Question 1 is "No," what is deemed the applicable effective date of the law?
 4. Should grants distributed pursuant to Sections 360.111 to 360.118 be distributed as soon as an issue is closed or delayed until the end of the state fiscal year?
 5. Would Sections 360.111 to 360.118 allow proportional distribution of grants among all qualifying issues, if there were inadequate funds appropriated to cover the costs of all grants?
 6. At what point in the year, or the state fiscal year, should grants for new money bonds be paid?
 7. Would the Health and Educational Facilities Authority be required to delay payments until the end of the fiscal year to determine if there is adequate funding for new money funds before authorizing grants for refunding bonds?
 8. If all funds appropriated during a fiscal year were distributed, would a bond issue receiving only a portion of its grant entitlement, or no grant entitlement, be eligible for amounts available in subsequent fiscal years?
 9. Should refunding bonds from prior years be given any priority over new money bonds in the new fiscal year or be required to wait until the end of the fiscal year for a determination of whether there are funds available?
Your questions relate to the implementation of Senate Bill No. 301. In your opinion request, you describe the effect of Senate Bill No. 301 as follows:
 In 1995 the Missouri Legislature adopted Senate Bill No. 301 (the "Law") creating Sections 360.106 and 360.111 RSMo. [Section 360.111 as enacted by Senate Bill No. 301 has been codified in RSMo Supp. 1995 as Sections 360.111 to 360.118.] The Law directs the Health and Educational Facilities Authority of the State of Missouri (the "Authority") to develop guidelines for, and the administration of, voluntary methods relating to the issuance of general obligation bonds by Missouri school districts (the "Program"). It also grants certain rights and duties to the Missouri Department of Elementary and Secondary Education ("DESE"). There are the following two principal incentives for school districts to participate in the Program.
 First, in an effort to improve the credit quality of all school districts in Missouri, the Law, effectively, provides for credit enhancement by authorizing the direct deposit by the State of Missouri to a bank serving as trustee of a portion of state aid payments that would otherwise be paid directly to the involved school district pursuant to a direct deposit agreement . . . . The direct deposit will be equal to debt service on the school district bonds. This procedure results in a credit rating on the school district bonds based to a large extent on the credit quality of the State. Accordingly, the major credit rating agencies are willing to rate school district bonds in the Program in the second highest rating category (i.e. "AA"), resulting in lower interest rates the school district bonds at no additional cost to the involved district or the State. Prior to this Program many such school district bonds were rated very low or could not be rated at all.
 Second, to assist the school districts with the costs involved in issuing such bonds, the Law provides for the Authority and DESE to coordinate the payment, if certain excess gaming revenues are annually received and appropriated by the State, of a grant to school districts for the lesser of two percent of the par amount of the bonds issued or the actual costs of issuance as determined by the Authority. Such grants may be paid in connection with general obligation bonds issued for either of the following purposes: (a) financing construction or renovation projects approved by voters after January 1, 1995 ("new money bonds"); or (b) refinancing construction or renovation projects or for refinancing of lease purchase obligations ("refunding bonds").
 The Legislature has appropriated $5 million for the July 1, 1995 — June 30, 1996 Fiscal Year pursuant to Section 164.303 RSMo. The Legislature may appropriate up to $7 million in future years pursuant to Section 164.303 RSMo.
Set forth below are the provisions of Senate Bill No. 301, as codified in RSMo Supp. 1995, most relevant to your questions:
 360.113. Districts with direct deposit agreement eligible for one-time grant for each issue for construction or to refinance lease purchase grant, amount. — 1. Any school district which has a direct deposit agreement with the authority pursuant to sections 360.111 to 360.118 shall be eligible to receive a one-time grant for each issue based upon the par amount of general obligation bonds issued for the purpose of financing construction or renovation projects approved by voters after January 1, 1995. or refinancing construction or renovation projects or for refinance of lease purchase obligations with general obligation bonds.
 2. Until July 1, 1997, the grant amount for a school district under subsection 1 of this section shall be the lesser of two percent of the par amount of the bonds issued or the actual costs of issuance as determined by the authority. [Emphasis added].
 360.114. Authority to determine grant amount, actual cost of issuance, when — transfers to be at no cost to school district. — 1. On or before July 1, 1997, and every two years thereafter, the authority shall determine the weighted average, actual cost of issuance percentage for issuances under section 360.106 during the two years immediately preceding the date such determination is required.
 2. On and after July 1, 1997, the grant amount for a school district under subsection 1 of section 360.113 shall be the lesser of the most recent weighted average, actual cost of issuance percentage, as determined by the authority pursuant to subsection 1 of this section, times the par amount of the bonds issued or the actual costs of issuance as determined by the authority. [Emphasis added].
* * *
 360.116. Payment of grants, procedure — refunding or refinancing existing bonds, net present value savings amount. — 1. Payment of grants under sections 360.111
to 360.118 shall be made from funds appropriated for such purpose under section 164.303, RSMo. Payment shall be authorized by the commissioner of education upon receipt of the closing legal opinion for the bonds by the commissioner of education and a certification by the school district that the funds will be used for cost relating to projects approved under and satisfying the qualifications and requirements of subsection 1 of section 360.113. [Emphasis added].
* * *
 360.117. Funding for grants less than amount of grants distributable, first priority construction or renovation projects. — If the amount of funding available for grants under sections 360.111 to 360.118 is less than the total amount of grants distributable under sections 360.111
to 360.118 for qualifying issues, first priority for funding of grants shall be given to qualifying issues for financing of construction or renovation projects.
The first issue for consideration is the effective date of Senate Bill No. 301. Senate Bill No. 301 contains an emergency clause which states:
 Section B. Because of the need to facilitate the financing mechanisms for certain school districts in this state, section A of this act is deemed necessary for the immediate preservation of the public health, welfare, peace and safety, and is hereby declared to be an emergency act within the meaning of the constitution, and section A of this act shall be in full force and effect upon its passage and approval.
Senate Bill No. 301 was approved on June 27, 1995, and thus, according to the provisions of Section B quoted above, is effective on that date.
One apparent concern is the validity of the emergency clause. Article m, Section 29 of the Missouri Constitution provides in part that laws passed by the General Assembly take effect 90 days after the adjournment of the session at which the law was enacted except in case of an emergency. See also Article III, Section 52 (a) of the Missouri Constitution and Section 1.130, RSMo 1994. If the act does not in fact constitute an emergency measure, the law did not become effective until the expiration of the 90 day period. See State ex rel. City of Charleston v. Holman,355 S.W.2d 946, 950 (Mo. banc 1962). The legislative declaration of an act to be an emergency measure is entitled to great weight but is not conclusive, because the courts possess the final authority to determine whether an emergency in fact exists. Osage OutdoorAdvertising, Inc. v. State Highway Commission of Missouri,687 S.W.2d 566, 569 (Mo.App. 1984). Through our opinions process, this office does not opine on the constitutionality of statutes enacted by the General Assembly. See Gershman InvestmentCorporation v. Danforth, 517 S.W.2d 33, 35 (Mo. banc 1974). This office customarily defends the laws enacted by the General Assembly. Where the General Assembly has determined that an emergency in fact exists, until a court rules to the contrary, we recommend your department consider the emergency clause valid and treat the effective date of Senate Bill No. 301 to be June 27, 1995.
Having concluded the effective date of Senate Bill No. 301 is June 27, 1995, we turn to your first numbered question asking if grants distributed pursuant to Sections 360.111 to 360.118 should be available for new money bonds (bonds for financing construction or renovation projects approved by voters after January 1, 1995) issued before the effective date of Senate Bill No. 301. With regard to retrospective application of laws, the general rule of law is:
 Generally, a statute may not be applied retrospectively. [citation omitted]. However, there are two recognized exceptions to this rule: (1) where the statute is procedural only and does not affect any substantive right of the parties, and (2) where the legislature manifests a clear intent that it be applied retrospectively. . . . A statute is substantive if it defines the rights and duties giving rise to the cause of action. [citation omitted]. It is procedural if it prescribes the method of enforcing rights and carrying on the suit. [citation omitted]. Substantive statutes take away or impair vested rights acquired under existing law, or create a new obligation or impose a new duty. [citation omitted].
Brennecka v. Director of Revenue, 855 S.W.2d 509, 511 (Mo.App. 1993); accord Callahan v. Cardinal Glennon Hospital, 863 S.W.2d 852,872 (Mo. banc 1993).
It is our opinion that the provisions of Senate Bill No. 301 are not to be applied retrospectively. The provisions are not simply procedural, nor has the legislature expressed a clear intent that there be retrospective application. Although Section360.113 refers to bonds issued for the "purpose of financing construction and renovation projects approved by voters after January 1, 1995," we do not consider such language as indicating a legislative intent to retrospectively apply the provisions of Senate Bill No. 301 to bonds approved by voters after January 1, 1995, and issued before the effective date of the bill. We recognize that school bonds for construction and renovation projects are usually issued several months, and sometimes several years, after the date of the election approving the bonds. Grants authorized by Senate Bill No. 301 are based on the issuance of the bonds. See Section 360.116.1. In fact, we recognize that some bonds approved by voters may never be issued. While Section360.113 limits grants to bonds approved by voters after January 1, 1995, we do not consider such language to manifest a clear legislative intent to apply the provisions of Senate Bill No. 301 to bonds approved by voters after January 1, 1995, but issued
before the effective date of Senate Bill No. 301, June 27, 1995. Therefore, grants authorized by Sections 360.111 to 360.118 are not available for new money bonds issued before the effective date of the bill, June 27, 1995.
With regard to your remaining questions, statutory "[c]onstruction must always seek to find and further [legislative] intent." Centerre Bank of Crane v. Director ofRevenue, 744 S.W.2d 754, 759 (Mo. banc 1988). When a statute is not explicit:
 but confers powers and duties in general terms, there may be resort to the necessary implications and intendments of the language to determine legislative intent. [citation omitted]. An implied power within this meaning is a power necessary for the efficient exercise of the power expressly conferred. In that sense, that which is implied in a statute is as much a part of it as that which is expressed.
AT T Information Systems, Inc., v. Wallemann, 827 S.W.2d 217,223-224 (Mo.App. 1992).
Your question numbered 4 asks if grants distributed pursuant to Sections 360.111 to 360.118 should be paid as soon as an issue is closed (the bonds are delivered to the buyer and the issuer receives the money) or delayed until the end of the state fiscal year. Your questions numbered 6 and 7 pose similar questions. We conclude that grants should not be paid until after the end of the state fiscal year when the information is available to calculate the amount to be paid to each recipient of a grant. Section 360.117 recognizes that the funding available for grants may be less than the amount of grants to be distributed pursuant to Sections 360.111 to 360.118. Under Section 360.117 first priority shall be given to grants relating to new money bonds. At the time a bond issue is closed, it is not possible to know if funds will be available to pay grants for all bonds issued during that fiscal year. For example, if a bond issue is closed in September, 1996, it is not possible to know at that time the number and amount of bond issues that may be closed during the remainder of the fiscal year ending June 30, 1997 (fiscal year 1997). It would not be possible to know in September, 1996, whether there are sufficient funds for fiscal year 1997 available to pay 100% of all grants to be distributed during fiscal year 1997 pursuant to Sections 360.111 to 360.118. The law favors construing statutes in harmony with reason and common sense and to avoid unreasonable results. Shands v. City of Kennett,756 F. Supp. 420, 422 (E.D. Mo. 1991). The most reasonable procedure for complying with Section 360.117's requirement to give priority to grants relating to new money bonds is to make the necessary calculations after the end of the state's fiscal year when the necessary information is available. Therefore, we conclude that grants should be paid after the end of the fiscal year when the information is available to calculate the amount to be paid to each recipient of a grant for that fiscal year.
In reaching the conclusion that grants should be paid after the end of the fiscal year, we recognize that Section 360.116.1 provides that payment of grants shall be authorized by the Commissioner of Education upon receipt of the closing legal opinion for the bonds and a school district certification relating to the bonds. "Authorize" means "[t]o empower; to give a right or authority to act; . . . [t]o permit a thing to be done in the future." Black's Law Dictionary 133 (6th ed. 1990). The language of Section 360.116.1 does not indicate that payment is necessarily to be made upon receipt of the closing legal opinion and school district certificate, only that upon receipt of the closing legal opinion and school district certificate there is the authority (the power) to make payment.
Your question numbered 5 asks if Sections 360.111 to 360.118
allow proportional distribution of grant monies in the event of inadequate funding. Section 360.113.1 does not, by its words, guarantee a school district a grant — the word used is "eligible." Section 360.117 anticipates that there may be less funding available than grants authorized. Section 360.117 states that when there is insufficient funding, priority is to be given to "qualifying issues for financing of construction or renovation projects" (new money bonds) over refunding bonds. As discussed previously, we concluded grant monies are to be paid after the end of the fiscal year. "The legislature is presumed to have intended a logical result, rather than an absurd or unreasonable one." Angoff v. M M Management Corp., 897 S.W.2d 649, 654
(Mo.App. 1995); accord David Ranken Jr. Technical Institute v.Boykins, 816 S.W.2d 189, 192 (Mo. banc 1991).
Thus, it is our opinion that in the event of inadequate funding, first priority is to be given grants for new money bonds, and if there is inadequate funding to cover all such grants in full, Sections 360.111 to 360.118 allow the grants to be distributed proportionately among those school districts authorized to receive grants for new money bonds. For example, if the grants authorized for a fiscal year for new money bonds are $10 million, the grants authorized for refunding bonds are $6 million, and the funds available are $7 million, the $7 million in available funds may be paid proportionately to the school districts authorized to receive the $10 million in grants for new money bonds. Each of those school districts would receive 70% of the grant for new money bonds which it is authorized to receive. School districts authorized to receive the $6 million in grants for refunding bonds would receive nothing because of the provision in Section 360.117 granting priority to grants for new money bonds.
If there are adequate funds to pay all the grants for new money bonds, the remaining funds would be used to pay the grants for refunding bonds. As an example, for a fiscal year, assume $5 million in grants authorized for new money bonds, $4 million in grants authorized for refunding bonds, and funds available of $7 million. There would be adequate funds available to pay all grants authorized for new money bonds ($5 million). That would leave $2 million ($7 million minus $5 million) available to pay the $4 million in grants authorized for refunding bonds. Sections360.111 to 360.118 would allow proportional distribution such that each school district authorized to receive a grant for refunding bonds would receive 50% of the grant authorized for the refunding bonds.
Your final two questions concern the payment in subsequent years of grants which were authorized in a prior year but which were not paid, in whole or in part, because of inadequate funds. The issue raised by your questions numbered 8 and 9 is whether the grants authorized but not paid should be paid from funds available in a subsequent year.
Section 360.113.1 refers to the grants as "a one-time grant for each issue." Section 360.117 recognizes that there may not be sufficient funds available to pay all grants authorized. There is no statutory language indicating a legislative intent that grants authorized for a prior year are to be paid from funds available in a subsequent year. Therefore, we conclude that grants authorized for a prior year which were not paid, in whole or in part, because of inadequate funds are not to be paid from funds available in a subsequent year.
CONCLUSION
It is the opinion of this office that (1) the effective date of Senate Bill No. 301, 88th General Assembly, First Regular Session (1995) is June 27, 1995, (2) grants authorized by Sections 360.111 to 360.118, RSMo Supp. 1995, are not available for new money bonds issued before June 27, 1995, (3) grants paid pursuant to Sections 360.111 to 360.118, RSMo Supp. 1995, should be paid after the end of the state fiscal year, (4) if there is inadequate funding to pay all grants authorized for new money bonds in a fiscal year, Sections 360.111 to 360.118, RSMo Supp. 1995, allow grants to be distributed proportionately among recipients of grants for new money bonds, (S) if there are adequate funds to pay all grants authorized for new money bonds in a fiscal year, the remaining funds should be used to pay grants authorized for refunding bonds, and (6) grants authorized in a prior year which were not paid, in whole or in part, because of inadequate funds are not to be paid from funds available in a subsequent year.
 JEREMIAH W. (JAY) NIXON Attorney General