John O. BELL, Judith P. Bell, Ronald Phillips, Joneda H. Phillips, Doug Allbritton, Nancy D. Allbritton, Frances B. Alexander, John E. Jameson, Harriott D. Jameson, J.W. Prada, Irislee M. Prada, James E. Elliott, Dottie Elliott, George M. Binger, and Barbara J. Binger, Respondents,

v.

William CLOUD, Milton Lane, James Gibson, Dru Maupin, and Floyd Branham, Members of the Board of Adjustment of the City of Fulton, Missouri, and Browning–Debo Funeral Home, Inc., and Robert L. Debo, Appellants.

No. WD 40530.

Missouri Court of Appeals, Western District.

Dec. 6, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 31, 1989.

Dale L. Rollings, Thomas A. Federer, Rollings, Gerhardt, Borchers & Stuhler, St. Charles, for appellants.

Milton B. Garber, Garber & Garber, Fulton, for respondents.

Before LOWENSTEIN, P.J., and TURNAGE and COVINGTON, JJ.

TURNAGE, Judge.

Robert Debo and his funeral home, Browning–Debo Funeral Home, Inc., applied to the Board of Adjustment of the City of Fulton for a variance to enlarge his funeral home, to maintain a sign, and to construct a parking lot to be used in connection with the funeral home. The Board granted a variance for all three uses. On appeal to the circuit court, the court reversed as to all three uses.

Debo has appealed from the judgment of the circuit court. Affirmed in part and reversed in part.

In 1961 Denzil Browning constructed a funeral home at 833 Court Street in Fulton. At that time Browning erected a freestanding sign which read "Browning." The sign was lighted on one side. At the time the funeral home was constructed the land was in zoning Class C which allowed funeral homes. Browning also purchased a house next door to the funeral home at 835 Court Street which was used as a duplex dwelling. In addition to the funeral home and the duplex, the funeral home operation consisted of two parking lots located behind the respective buildings.

In 1972 and 1984 the City passed a new zoning ordinance whereby the property at 833 and 835 Court Street were both zoned R–2 which did not permit funeral homes.

In 1976 the Browning Funeral Home and the duplex were purchased by Robert Debo. Debo continued the operation of the funeral home and the house continued to be occupied as a duplex. The sign was changed by inserting a new plastic face which read "Browning–Debo." In 1987 another plastic insert was placed on the sign so that it read "Debo, A Golden Rule Funeral Home."

Debo testified before the Board that his business had increased by about 50% from his purchase until 1987. To accommodate

the growth in his business, Debo had investigated the possibility of buying a house at the corner of 9th and Court Streets which was in the same block as his funeral home, duplex, and parking lots. Debo planned to demolish the house and construct a parking lot on that site. He also planned to demolish the duplex and enlarge the funeral home by building an addition on the tract occupied by the duplex. His plan further called for the freestanding sign to be removed and a new sign to be installed on the addition to the funeral home.

After contacting the City, Debo learned it would be necessary to obtain a variance from the Board of Adjustment before he could carry out his plans. To that end, Browning sought a variance from the Board to allow him to remove the duplex and enlarge his funeral home, to maintain the freestanding sign until the addition to the funeral home was completed, and to build a parking lot at the corner of 9th and Court. The old house at that location had already been torn down by Debo and the lot was vacant.

At a hearing before the Board, Debo testified to the acquisition of the funeral home, duplex, and sign in 1976. He testified that his business had grown and that he needed more space for parking because during visitation many cars were parking on the streets. For that reason he decided to build the additional parking lot at 9th and Court. Debo testified that he paid $40,000 for the lot at 9th and Court and by the time it was ready to have the parking lot constructed on it, he would have about $44,500 invested in the project. Debo placed the value of the duplex at about $40,000 and the value of the funeral home and the parking lots used in connection therewith at approximately $300,000. Browning stated the funeral home had been constructed as such and was therefore not suitable for residential purposes. He estimated that the value of the funeral home and the duplex if used solely for residential purposes would be $85,000.

There was one property owner at the hearing from the neighborhood, who opposed the application before the Board on the ground that the funeral home changed the character of the neighborhood and its enlargement would further take away from its residential character.

The Board granted a variance in all respects as requested by Debo and several property owners in the neighborhood filed a writ of certiorari in the circuit court.

The court heard additional evidence concerning the historical nature of the neighborhood along Court Street and how the enlargement of the funeral home and the construction of the additional parking lot would drastically alter that character. Debo presented evidence before the court that the value of the funeral home and duplex would be reduced by almost one-third if the use were restricted to residential.

The court found that the lot at 9th and Court was zoned R–2 and in that zoning district a parking lot was allowed only if it were within 300 feet of a C or M district and such lot was not within that distance. The court found that the Board improperly granted a variance for the construction of a parking lot by Debo on that location. The court further found that there was no evidence that the funeral home and duplex could not yield a reasonable return if used only for purposes allowed in an R–2 district. The court held there was no evidence to justify a use variance to allow an addition to the funeral home. The court further found that the sign had been a nonconforming use but that the ordinance would not allow a nonconforming use to continue after a change in ownership or message. The court found the Board had improperly allowed a variance for the sign.

The scope of review of a decision of the Board of Adjustment is limited "... to a determination of whether the ruling is authorized by law and is supported by competent and substantial evidence upon the whole record." *Rosedale–Skinker Improvement Ass'n. v. Board of Adjustment of the City of St. Louis,* 425 S.W.2d 929, 936[7, 8] (Mo. banc 1968).

Debo first contends the court erroneously considered his application for a variance to be a use variance rather than an area

variance. In *Matthew v. Smith*, 707 S.W. 2d 411, 413 (Mo. banc 1986), the court discussed the distinction between use variances and area variances. The court said that an area variance relates mostly to restriction of height, area, setback and side line restrictions. These are nonuse or bulk restrictions. The court said that use variances are those which permit a use other than one prescribed by the ordinance as being allowed in the particular district in which the property is zoned.

■ Under the definition adopted in *Matthew*, the variance sought in this case for the construction of the parking lot at 9th and Court and the enlargement of the funeral home were use variances. The use of the lot at 9th and Court for parking would not be permitted in the R–2 district unless it was within 300 feet of a C or M district which it was not. Thus, the use sought was for a purpose not authorized in the R–2 district. Also, the use of the duplex would change to funeral home use which was not permitted in an R–2 district. Thus, in these two respects, the variances sought were use variances.

*Matthew* further held that to obtain a use variance it is necessary under § 89.090, RSMo 1986, to establish *inter alia* unnecessary hardship. The court further quoted from *Otto v. Steinhilber*, 282 N.Y. 71, 24 N.E.2d 851, 853 (1939), as follows:

> Before the Board may exercise its discretion and grant a variance upon the ground of unnecessary hardship, the record must show that (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality.

*Id.* at 416–417[2].

The court further pointed out that the question of the yield of a reasonable return cannot be shown by conclusory statements or lay opinion. The court quoted with approval from *N. Westchester Prof. Park v. Town of Bedford*, 60 N.Y.2d 492, 470 N.Y. S.2d 350, 458 N.E.2d 809, 814 (1983), which held that there must be " '... proof in dollars and cents form of the owner's investment in the property as well as the return that the property will produce from the various uses permissible ...' " in the district for which it is zoned. *Id.* at 417.

■ The court in this case correctly concluded that Debo had failed to prove that the land occupied by the funeral home and duplex could not yield a reasonable return if used only for the purposes allowed in District R–2. In *Crossroads Recreation, Inc. v. Broz*, 4 N.Y.2d 39, 172 N.Y.S.2d 129, 149 N.E.2d 65, 67[3] (1958), the court held that a business operating as a nonconforming use was a use permitted in the district in which the property was located. The court held this was so because the business was allowed to continue as a nonconforming use, and therefore it was a permitted use in the zoning district in which it was located. The court further held that to obtain a variance to enlarge and extend the nonconforming use the owner was required to prove that his property could not yield a reasonable return if used for its nonconforming purpose. Applying that principle to this case, Debo was required to prove that the property occupied by the funeral home and the duplex could not yield a reasonable return if used for a funeral home and duplex. There was no evidence of this fact; moreover, the testimony by Debo that his business had increased about 50% since 1976 would indicate that such proof was probably not available.

It was necessary for Debo to prove that the lot at 9th and Court could not yield a reasonable return if used only for those purposes specifically allowed in District R–2. The only evidence concerning this lot was the amount Debo had paid coupled with expenses of removing the house. There was no evidence of what the lot would yield if used for any of the purposes authorized in District R–2.

Because of the absence of proof that the funeral home and duplex and the lot at 9th and Court could not yield a reasonable re-

turn as discussed herein, the court correctly ruled that the Board had illegally granted a variance for those tracts. In that respect, the action of the Board was not supported by competent and substantial evidence.

The court held that the freestanding sign was a nonconforming use but that such nonconforming use had been lost by reason of the change of ownership and the change in the message carried by the sign. The court held that this was required by the zoning ordinance of Fulton. The parties have not specifically addressed this question and have not cited any provisions of the ordinance which provides a nonconforming use is destroyed by change of ownership or change in message of the sign. The only provision in the ordinance relating to a change in a nonconforming use prohibits structural alterations or rebuilding of buildings which have been destroyed by more than 75% of their reasonable value by fire.

■ In *State ex rel. Keeven v. City of Hazelwood*, 585 S.W.2d 557, 560[6] (Mo. App.1979), the court held that "the legality of a nonconforming use of property is vested by the use and not by the ownership or tenancy" of the property. Thus, the change in ownership of the sign would not destroy its nonconforming use.

The change in message did not involve anything structural in the sign but only meant the replacement of a plastic cover with a change of wording. Even the plastic cover was the same as the previous covering but the words thereon were different. This was a de minimis change which would not destroy the nonconforming use. *Rothrock v. Zoning Hearing Bd. of Whitehall Tp.*, 13 Pa.Cmwlth. 440, 319 A.2d 432, 433[1, 2] (1974). *C.f. Roberts v. Highway and Transp. Com'n*, 741 S.W.2d 815, 187[1] (Mo.App.1987).

The court erred in holding that the nonconforming use of the freestanding sign had been lost.

The judgment of the court reversing the variance granted by the Board for the use of the lot at 9th and Court as a parking lot and the judgment reversing the grant of the variance for the enlargement of the funeral home on to the tract occupied by the duplex is affirmed. The judgment reversing the grant of a variance for the maintenance of the freestanding sign is reversed and this cause is remanded with directions to enter a judgment that the freestanding sign is a lawful nonconforming use for which a variance is not required.

Costs on this appeal are divided one-third against John Bell and the other respondents and two-thirds against Robert Debo and Browning–Debo Funeral Home, Inc.

All concur.