**ROYAL FOOD SYSTEMS, INC.,**
**Plaintiff/Respondent,**

v.

**MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Defendant/Appellant.**

No. 64848.

Missouri Court of Appeals,
Eastern District,
Division One.

May 17, 1994.

Kim R. Reid, Asst. Counsel, Paul R. Ferber, Dist. Counsel, Rich Tiemeyer, Chief Counsel, Mo. Hwy. and Transp. Com'n, Chesterfield, for defendant, appellant.

Michael E. Kaemmerer, McCarthy, Leonard, Kaemmerer, Owen, Laderman & Lamkin, Chesterfield, for plaintiff, respondent.

REINHARD, Judge.

The Missouri Highway and Transportation Commission (Commission) appeals an order of the circuit court reversing the Commission's order to remove an outdoor advertising sign owned by respondent, Royal Food Systems, Inc. (Royal). We affirm.

In October 1966, a Texaco gas station was built at the intersection of I–70 and Route K in O'Fallon. The station property included a large outdoor advertising sign spelling out "Texaco". The sign's base consisted of three metal support poles, each imbedded in a cement foundation. The poles were seventy-five feet high. The sign was within 660 feet of the Highway 70 right-of-way.

In 1980, the Texaco station was purchased by a real estate developer (Baldridge) who subdivided the property into two smaller lots. Lot 1 was purchased by Royal for a Wendy's franchise. The Royal purchase included the sign (which is located on Lot 2), and a ten foot easement over Lot 2 for the sign and electric line. Subsequently, Lot 2 was purchased by a Midas Muffler franchise. In January, 1981, Royal installed a Wendy's logo on the portion of the sign that had read "Texaco".

On May 29, 1981, the Commission notified Royal that it had determined the sign to be unlawful because it had been erected after March 30, 1972, and was within 500 feet of an existing sign in violation of § 226.540(3), RSMo 1986, of the Missouri Billboard Act (Act). No other ground for removal was indicated in the Notice to Remove.

Royal requested administrative review of the Notice to Remove. Hearings were held in 1982. In 1988, the Commission found that the Notice to Remove had been properly

issued.[1] Royal appealed to the circuit court, which reversed the Commission's ruling.

In the Commission's sole point on appeal, it alleges that the court "erred in reversing the Commission's order directing the removal of the subject sign because the Commission's decision ... was supported by competent and substantial evidence on the whole record."

 Our review of a contested administrative case is of the agency's decision, not the judgment of the circuit court. *Stephenson's Restaurants, Inc. v. Mo. State Highway and Transportation Com'n,* 666 S.W.2d 437, 440 (Mo.App.1984). The assertion that a sign is a nonconforming use is a proposition for the proponent to prove. *State ex rel. National Advertising Co. v. State Highway Com'n,* 624 S.W.2d 453, 461 (Mo.App.1981). The question in each case is one of fact and denial of such use will be sustained where the evidence of the prior use is doubtful. *Id.* The determination of facts rests with the administrative agency. *Osage Outdoor Advertising, Inc. v. State Highway Commission of Missouri,* 687 S.W.2d 566, 568 (Mo.App. 1984). Our review of the Commission's findings of fact is limited to determining whether its decision is supported by competent and substantial evidence on the whole record and, if the evidence would warrant either of two opposed findings, we must uphold the factual determination the agency has made. *Id.*

The provisions of the act relating to size, spacing and lighting only apply to signs erected subsequent to March 30, 1972. § 226.560, RSMo 1986.

Signs which are lawfully erected but fail to conform to the requirements of statutes enacted at a later date may be maintained as nonconforming signs,.... However, as provided in the Code of Federal Regulations, "[i]n order to maintain and continue a nonconforming sign, ... [t]he sign must remain substantially the same as it was on the effective date of the State law or regulations.... Each State shall develop its own criteria to determine when ... a substantial change has occurred which would terminate nonconforming rights."

*Hulshof,* 737 S.W.2d at 727. (Citations omitted).

Here, there is uncontroverted evidence, in the form of photographs, testimony and a permit, that the Texaco sign was erected in 1966. Thus, two issues must be addressed in this case: (1) was the sign erected in 1966 maintained as a non-conforming sign pursuant to the statutes and regulations, and (2) did Royal's modification of the sign constitute the erection of a new sign.

 The Commission concedes the transfer of ownership of the property from Texaco to Baldridge to Royal did not eliminate the non-conforming status of the sign. In *State ex rel. Keeven v. City of Hazelwood,* 585 S.W.2d 557, 560 (Mo.App.1979), the court held: "The legality of a non-conforming use of property is *vested* by the use and not the ownership or tenancy." Here, there is no evidence that the Texaco sign was not maintained as a non-conforming sign.

 On appeal, the Commission argues that changing the sign's display from "Texaco" to "Wendy's" constituted the erection of a new sign and, therefore, the sign was not substantially the same as it was on March 30, 1972. We disagree.

In *Roberts v. Highway and Transp. Com'n,* 741 S.W.2d 815, 817 (Mo.App.1987), Judge Greene, in discussing the Act noted:

The federal and state governments recognized that many advertising billboards erected before the effective date of the applicable federal and state statutes and administrative rules in question did not comply with sizing and other standards set out in the new laws and rules.... [T]he

---

1. We note that compliance with the provisions of [the Code of State Regulations] is demanded by federal law and is crucial to federal highway funding in Missouri, in that [federal law] provides for the reduction of federal highway funds if a state does not provide for effective control of billboards within 660 feet of the nearest edge of a right-of-way on an interstate

highway. As provided in the Code of Federal Regulations, "effective control" means that illegal signs, defined as those "erected or maintained in violation of State law [including regulations]," must be removed expeditiously. *Hulshof v. Missouri Highway and Trans Com'n,* 737 S.W.2d 726, 728 (Mo. banc 1987). (Citations omitted).

Federal Highway Administration issued rules to assure effective state control of the continuation, use and maintenance of "nonconforming signs," ... by providing ... "[t]he sign must remain *substantially* the same as it was on the effective date of the State law or regulations. Reasonable repair and maintenance of the sign, including a change of advertising message, is not a change which would terminate nonconforming rights." (Emphasis in original).

Only two witnesses' testimony related to the modification of the sign. Thomas Terril (the salesman employed by Baldridge who had identified the property as well-suited for a Wendy's franchise, and handled the acquisition of the Texaco property and the sale to Royal) testified the sign was an important factor in the purchase of the property by Baldridge and, subsequently, by Royal. He also testified that when he visited the property in 1979, prior to the purchase by Baldridge, the Texaco sign was intact, and still displayed the six letters spelling "Texaco."

William Simon was president of the Simon–Simon Erection Company. He said his company installed the Wendy's message on the sign in January 1981. He testified that, at that time, the Texaco message was gone. However, he was able to determine from their appearance that the support poles were from a Texaco sign, which had been removed "and the structural members left intact." He also said the split beams were welded on each side. He also testified that "[what we] *did* here was a *common* practice, when a business changes or a new tenant moves in, we change the face or change the message on the existing sign or structure, whichever is left." On cross-examination, the Commission's counsel asked, "I believe you testified that you erected the subject sign in January of 1981. Was that your testimony?" Simon replied, "That's correct."

█ The advertising message on a sign which falls within the § 226.560 exemption can be changed without rendering the modified sign a new erection, and, therefore, removing it from the exemption. 7 CSR 10–6.060(3) provides:

... violation of any one (1) or more of the following subsections ... disqualifies any sign from being maintained as a nonconforming sign and subjects it to removal ...

(A) Message Content. *Changes of advertising message content are permissible....* (Emphasis ours).

Changing the advertising message includes changing the display to reflect a change in ownership. *Bell v. Cloud,* 764 S.W.2d 105, 109 (Mo.App.1988). *Bell* involved a sign outside a funeral home and its conformance with a local zoning ordinance. The sign had a plastic display which read "Browning". The display was changed to read "Browning–Debo" to reflect new ownership. The Western District held that modification constituted a de minimis change which did not destroy the nonconforming use. *Id.*

The issue, then, is whether the instant case involves a mere change of message or the erection of a new sign. The facts here fall somewhere between *Bell,* where an identical piece of plastic was reinserted on the sign (albeit with different words painted on it), and a situation where the entire structure was removed and replaced. Here, the structure and support poles were left intact, making it more analogous to the former situation than the latter. We also note that "Texaco" and "Wendy's" each contain six letters. While we recognize that the courts have applied this law very strictly, "[l]aw should reflect common sense. The Commission's position in this case does not. We need not let our fear of losing so-called federal dollars override a basic sense of fair play and good judgment." *Roberts,* 741 S.W.2d at 819.

The only evidence the Commission cited in its findings to support its ruling that the sign was erected in 1981 was that portion of Simon's testimony during cross-examination quoted above. The Commission took this testimony out of context, ignored Simon's testimony as to the details of what his company had done and ignored the Commission's own photographic exhibits. There is no evidence in this case that Royal's actions were dissimilar in any way from what would occur anytime a business is sold and its name changed.

The Commission's other arguments are without merit, and some are outside the

framework of its point on appeal and the Notice to Remove. The decision of the Commission ordering Royal to remove the sign was not supported by substantial and competent evidence and, furthermore, is unreasonable, arbitrary and capricious.

We affirm.

CRANDALL, P.J., and CRIST, J., concur.