**ICEHOUSE COLD STORAGE, INC., Appellant,**

v.

**STATE HIGHWAYS AND TRANSPORTATION COMMISSION, Respondent.**

**No. WD 57317.**

Missouri Court of Appeals, Western District.

May 23, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 2000.

Application for Transfer Denied Aug. 29, 2000.

James J. O'Connell, Kansas City, for appellant.

Robert Michael Hibbs, Jefferson City, for respondent.

SPINDEN, Judge.

This case involves the Missouri Highways and Transportation Commission decision to tear down an older billboard in downtown Kansas City because it ceased to advertise "on premise" goods or services and is advertising "off premise" goods or services.[1] The commission contends that such a change in advertising message constitutes the erection of a new billboard and that the billboard is not entitled to a "nonconforming sign" designation.[2] Because the commission's position is contrary to its own regulation, we disagree with it and, therefore, reverse the circuit court's judgment to affirm the commission's order to tear down the billboard.

The billboard is at 1656 Washington Street in Kansas City, within 660 feet of I–35's right-of-way, visible to I–35 travelers and on the same side of the highway and within 500 feet of another sign. A fish company[3] built the billboard in 1971 before the federal government "greenmailed" Missouri into regulating billboards.[4] The fish company used the billboard to advertise on premise goods and services. Tom Sullivan and Ken Luther apparently bought the billboard and adjacent premises at some point[5] and, in 1984, changed the billboard to advertise off premise products—cigarettes and a radio station. Because of the change, the Department of Transportation[6] issued a notice ordering Sullivan and Luther to remove the bill-

1. Section 226.520(2), RSMo 1994, permits "[s]igns, displays and devices advertising activities conducted on the property upon which they are located, or services and products therein provided" to be erected or maintained within 660 feet of the nearest edge of the right-of-way and visible from the main traveled way of the interstate. Off premise advertising advertises activities not conducted on the property or advertise services or products not provided on the property.

2. As used in the billboard laws, a "nonconforming sign" designation is desirable. It means that the sign's owner will not have to remove it even though the sign does not conform to the law.

3. The record is unclear as to what the company's name was.

4. The federal government has "encouraged" Missouri authorities to regulate outdoor advertising that is within 660 feet of any interstate or primary highway right-of-way and visible from the main traveled way of the system by threatening that, if it did not, it would lose 10 percent of its federal highway appropriation. 23 U.S.C. § 131(b).

5. Because of gaps in the record, we must make suppositions about the billboard's history.

6. Formerly known as the Department of Highways and Transportation.

board. After a hearing, the commission found that the billboard was unlawful and ordered its removal.

In the meantime, Sullivan and Luther assigned their right to control the billboard to Fletcher Sapp and Ronald Sapp. The Sapps filed a petition in the circuit court asking for review of the commission's order, but they did not pursue the case. The circuit court dismissed the case on December 19, 1988, for failure to prosecute. The Sapps signed a removal form in which they promised to remove the billboard by February 21, 1989, and, if they broke their promise, they authorized the commission to remove it at their expense.

However, in a March 28, 1989, letter to the department's inspector, Fletcher Sapp announced that, after a meeting and agreement with the department, the billboard's advertising message was being changed to advertise on premise goods and services. On May 9, 1989, the department's district engineer withdrew the notice to remove the billboard because the basis for its being declared unlawful had been corrected. The billboard was not removed and again began advertising on premise products.[7]

In December 1994, Icehouse Cold Storage acquired the billboard. On December 24, 1997, the department's permit specialist mailed to Icehouse Cold Storage a notice that Icehouse would have to remove the billboard. The notice said that the billboard was unlawful pursuant to § 226.580 [8] because it "was erected or is being maintained after March 30, 1972 contrary to ... spacing provisions of § 226.540(3)" and because Icehouse Cold Storage did not "obtain or maintain" a permit for it. Icehouse Cold Storage challenged the notice and requested a hearing before the commission.

When the commission convened a hearing on April 15, 1998, the billboard advertised a casino and a professional hockey team. Icehouse Cold Storage was not operating a casino or fielding a professional hockey team. The commission found that the notice to remove the outdoor advertising was properly issued and ordered the billboard's removal. The commission found that the billboard was unlawful because it was erected after March 30, 1972, was adjacent to, and within 660 feet of, the nearest edge of the right-of way of an interstate highway, was visible from the main traveled way of the interstate highway, was in an area zoned industrial, and was erected within 500 feet of an existing sign on the same side of the highway. The commission determined that the billboard was erected after March 30, 1972, when its sign was changed from on-premise advertising to off-premise advertising. The commission also concluded that the billboard violated § 226.580.1(2) and 7 CSR 10–6.080(2)(B) because the department had not issued a permit for it. Icehouse Cold Storage filed a petition for review of the commission's decision with the circuit court, and the circuit court affirmed the commission's decision.

■ Icehouse Cold Storage appeals. We review the commission's decision, not the circuit court's—*Hulshof v. Missouri Highway and Transportation Commission*, 737 S.W.2d 726, 727 (Mo. banc 1987)—to determine whether it was supported by competent and substantial evidence, whether it was arbitrary, capricious or unreasonable, or whether the commission abused its discretion. *State of Missouri, ex rel. Western Outdoor Advertising Company v. State Highway and Transpor-*

---

7. The commission emphasizes this event. It notes that it could have removed the billboard and that it did not somehow converted the billboard into a new, on premise billboard. We disagree. The commission could have removed the billboard, but it did not. It permitted the billboard to *remain—* to *contin-*

*ue* standing—because the message was changed back to advertising on premise goods and services. This does not constitute the erection of a new billboard.

8. All citations to statutes refer to the 1994 Revised Statutes.

*tation Commission of State of Missouri,* 813 S.W.2d 360, 362 (Mo.App.1991).

■ Icehouse Cold Storage asserts that the commission erred in not concluding that the outdoor advertising qualified for a "nonconforming sign" designation. We agree.

In response to federal mandate, 23 U.S.C. § 131, *et seq.,* Missouri's legislature enacted §§ 226.500 to 226.600 to regulate billboards within 660 feet of an interstate or primary highway. Both the federal and Missouri governments recognized, however, that outdoor advertising erected before the effective date of the laws may not comply with the laws' standards. To "grandfather" this advertising, the Federal Highway Administration issued Regulation 23 CFR 750.707(d)(5) which says:

> [T]o maintain and continue a nonconforming sign, . . . [t]he sign must remain substantially the same as it was on the effective date of the [s]tate law or regulations. Reasonable repair and maintenance of the sign, including a change of advertising message, is not a change which would terminate nonconforming rights. Each [s]tate shall develop its own criteria to determine when customary maintenance ceases and a substantial change has occurred which would terminate nonconforming rights.

Missouri's Department of Transportation implemented regulations concerning nonconforming signs. Regulation 7 CSR 10–6.015(21)[9] defines a nonconforming sign as "a sign which was lawfully erected but which does not conform to the requirements of statutes enacted at a later date[.]" The department's regulations also set forth categories of nonconforming

signs and the criteria for maintaining the nonconforming status of a sign. *See* 7 CSR 10–6.060. The department lumped nonconforming signs into five categories: (1) those within a commercial or industrial area and within 660 feet of the nearest edge of the right-of-way and visible from the main traveled way of any highway which is a part of the interstate or primary system; (2) those outside a commercial or industrial area and within 660 feet of the nearest edge of the right-of-way and visible from the main traveled way of any highway which is a part of the interstate or primary system; (3) those beyond 660 feet of the right-of-way; (4) tourist area signs; and (5) landmark signs. *See* 7 CSR 10–6.060(2)(A), (B), (C), (D) and (E). Regulation 7 CSR 10–6.060(3) provides that reasonable maintenance and repair of nonconforming signs is permissible but that violations of certain subsections of the rule disqualifies the signs from being maintained as nonconforming, and subjects them to the penalty of removal. A change in advertising message, however, will not destroy the nonconforming status of a sign. 7 CSR 10–6.060(3)(A).

Before resolving whether the billboard's sign qualifies as a nonconforming sign, we must determine when the sign was erected.[10] Icehouse Cold Storage asserts that the sign was erected in June 1971 when the billboard was built. The commission, on the other hand, maintains that "an off-premise sign was erected after March 30, 1972, . . . when the sign structure was changed from on-premise advertising to off-premise advertising."

■ The billboard was erected lawfully in 1971 when the fish company planted its

---

**9.** When referring to the specific sections within the Code of State Regulations, we refer to the regulations which were in effect when the department issued the notice to Icehouse Cold Storage to remove its billboard. The department filed several amendments to the regulations contained in 7 CSR 10–6 on August 31, 1999, and the amendments became effective on March 30, 2000.

**10.** Regulation 7 CSR 10–6.015(11) defines "erect" as "to construct, build, raise, assemble, place, affix, attach, create, paint, draw or in any other way bring into being or establish."

large pole in the ground and attached a billboard to it. The reason that the billboard no longer conforms to statutory requirements is because of a change in the billboard's advertising message. The department's regulation says, however, that such a change will not alter the sign's designation as a nonconforming sign. 7 CSR 10–6.060(3)(A). The regulation makes no distinction between on premise messages and off premise messages. We do not find any requirement in the statutes or the department's regulations that, to be considered a nonconforming sign, a sign must be erected as a specific type of sign and be maintained as that type of sign. The department's regulation merely states that the sign must have been lawfully erected and now fails to conform to statutory requirements. Icehouse Cold Storage's sign meets that definition.

The evidence established that the billboard is in an area zoned for industrial use and is within 660 feet of the nearest edge of the right-of-way and visible from the main traveled way of any highway which is a part of the interstate or primary system. Regulation 7 CSR 10–6.060(2)(A) says that such signs are nonconforming signs if they do not meet the sizing, lighting, spacing or location requirements of the current statutes. The department further declares that such signs may be maintained subject to the criteria for maintenance of nonconforming signs in 7 CSR 10–6.060(3). 7 CSR 10–6.060(2)(A). The only other requirement applicable to Icehouse Cold Storage's sign is that set forth in § 226.580 which says that signs erected after January 1, 1968, but before March 30, 1972, and which are within 660 feet of the right-of-way of interstate or primary highways are subject to removal if they do not meet the sizing, spacing, lighting or location provisions of §§ 226.500 to 226.600, RSMo 1969. Section 226.580.1(1).

■ Because the commission concluded that the sign was erected after March 30, 1972, it did not address the factual issues concerning whether the sign met the siz-

ing, spacing, lighting or location provisions of §§ 226.500 to 226.600, RSMo 1969, or whether it met all the criteria regarding the maintenance of the sign pursuant to 7 CSR 10–6.060(3). We, therefore, must reverse the circuit court's judgment and remand to the circuit court with instructions that it remand it to the commission for further proceedings to consider this issue.

The commission also concluded that, because no permit had been obtained for the sign, the sign was subject to removal pursuant to § 226.580.1(2) and 7 CSR 10–6.080(2)(B). Section 226.580.1(2) prohibits signs for which a permit is not obtained. Section 226.580.3, however, provides:

> Notwithstanding any other provisions of sections 226.500 to 226.600, no outdoor advertising structure erected prior to August 28, 1992, defined as a "structure lawfully existing" or "lawfully existing", by subdivision (1), (2) or (3) of subsection 2 of section 226.550, shall be removed for failure to have a permit until a notice, as provided in this section, has been issued which shall specify failure to obtain a permit ... as the basis for alleged unlawfulness, and shall advise that failure to take the remedial action of applying for a permit ... within thirty days will result in the sign being removed. Upon application made within the thirty-day period as provided in this section, and accompanied by the fee prescribed by section 226.550, together with any inspection fees that would have been payable if a permit had been timely issued, the state highways and transportation commission shall issue a one-time permanent permit for such sign.

Thus, if, upon further proceedings, the commission concludes that the sign meets the sizing, spacing, lighting or location provisions of §§ 226.500 to 226.600, RSMo 1969, and meets all the criteria regarding the maintenance of the sign pursuant to 7 CSR 10–6.060(3), the commission shall allow Icehouse Cold Storage to file an application for a permit and pay all the applicable fees.

We reverse the circuit court's judgment and remand the case to the commission for further proceedings.

JOSEPH M. ELLIS, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.