**OZARKLAND ENTERPRISES, INC., Appellant,**

v.

**MISSOURI HIGHWAY AND TRANS-PORTATION COMMISSION, Respondent.**

**No. WD 60420.**

Missouri Court of Appeals, Western District.

Sept. 3, 2002.

484

Alex Bartlett, Jefferson City, MO, for appellant.

Robert Hibbs, Jefferson City, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, RONALD R. HOLLIGER, Judge and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Chief Judge.

Appellant Ozarkland Enterprises, Inc. appeals from a circuit court judgment affirming a final decision and order of the Missouri Highway and Transportation Commission ("Commission") ordering the removal of an outdoor advertising sign owned by Appellant.

Appellant owns and maintains an outdoor advertising sign on the south side of Interstate 70, six miles west of U.S. Route 54 in Callaway County, Missouri. The sign is visible from I–70 and is located within 660 feet of the highway right-of-way. Callaway County does not have comprehensive zoning ordinances, and the sign is not located within any incorporated municipality.

The sign was erected on June 22, 1964. Subsequently, legislation and administrative regulations were enacted at both the federal and state levels related to advertising structures along interstate and primary highways.[1] In response to these changes in the law, on June 24, 1972, Appellant filed a special application for permit to maintain the sign as a "nonconforming sign."[2] On June 26, 1972, the Department of Transportation, issued an

---

1. These changes were described in *Roberts v. Missouri Highway & Transportation Commission*, 741 S.W.2d 815, 817 (Mo.App. S.D. 1987):

> The "Highway Beautification Act of 1965" (23 U.S.C.A. § 131, et seq.) was enacted requiring states to effectively regulate advertising structures within 660 feet of any interstate or primary highway right-of-way or be penalized 10 percent of their federal highway appropriation. In the same year, the Missouri legislature enacted §§ 226.500 to 226.600 to meet our state's obligations under the federal act. These statutes, with later amendments, set standards for sizing, spacing, lighting and location, as well as establishing a permit system, and contain provisions for removal if the signs are erected or maintained in violation of law.
>
> The federal and state governments recognized that many advertising billboards erected before the effective date of the applicable federal and state statutes and administrative rules in question did not comply with sizing and other standards set out in the new laws and rules. In order to provide continued legitimacy of such signs, under proper safeguards in keeping with the purpose of the federal act, the Federal Highway Administration issued rules to assure effective state control of the continuation, use and maintenance of "nonconforming signs," . . .

2. "As used in the billboard laws, a 'nonconforming sign' designation is desirable. It means that the sign's owner will not have to

outdoor advertising permit to Appellant for the nonconforming sign. The Commission renewed the permit on June 26, 1998.

On October 11, 1998, Joyce Musick, a permit inspector for the Department of Transportation discovered that a portion of the sign had been blown over by a storm. Three of the sign's seven posts had been blown over, along with a portion of the face of the sign. On November 23, 1998, Ms. Musick sent Appellant a letter on behalf of the Department of Transportation stating:

> This letter is to advise you that the above noted sign has been partially blown over. Four poles are still standing. Three poles are blown down. This sign is a nonconforming sign, however since less than 50% was damaged, you are allowed to repair it.
>
> Please replace only the three poles that were blown down within the next 30 days.

After receiving that letter, Appellant hired Ron Smithe to replace the three poles. Without notifying Appellant, Mr. Smithe replaced four of the sign poles rather than three during the course of making repairs.

On January 26, 1999, Ms. Musick discovered that the sign had four new poles. On March 8, 1999, Ms. Musick, on behalf of the Missouri Department of Transportation, sent Appellant a Notice to Terminate Nonconforming Outdoor Advertising indicating that "[t]he sign has been repaired after deterioration or damage, after the sign became nonconforming as prohibited by 7 CSR 10–6.060(3)(D)," and ordering Appellant to remove the sign within thirty days. In March 1999, after receiving the Notice from the Department, Appellant removed the fourth new pole.

After the Department of Transportation refused to rescind its order, Appellant appealed to the Commission. The Commission conducted a hearing on the matter on September 8, 1999. On September 1, 2000, the Commission issued its Report and Order[3] finding that the sign had been a lawful nonconforming sign but that it had been damaged after October 1998 so as to need or require the repair of 50% or more of the poles or vertical supports in violation of 7 CSR 10–6.060(3)(D). The Commission concluded that the Notice to Terminate had been properly issued and ordered Appellant to remove the sign within thirty days.

On January 19, 2001, Appellant filed a petition for review of the Commission's Report and Order in the Circuit Court of Cole County. On July 25, 2001, the Circuit Court affirmed the Commission's ruling.

On appeal, Appellant claims that the Commission's finding that the sign had become "deteriorated or damaged," as defined by the applicable regulations, was not supported by substantial evidence. Appellant contends that the evidence does not support a finding that the sign "needed or required" the replacement of more than three of the seven poles and that it should not be penalized because the individual hired to repair the sign chose to replace a

---

remove it even though the sign does not conform to the law." *Icehouse Cold Storage, Inc. v. State Highways & Transp. Comm'n*, 23 S.W.3d 651, 652 n. 2 (Mo.App. W.D.2000).

**3.** 7 CSR 10–6.090(11) requires the hearing examiner to issue a suggested report and order to the Commission as soon as practical after receipt of the transcript and any briefs filed by the parties. 7 CSR 10–6.090(12) provides that the Commission shall read the full record and render a final decision as soon as practical after receipt of the suggested report and order.

fourth pole without the knowledge or permission of Appellant.

■ On appeal, we review the Commission's decision rather than that of the circuit court. *Icehouse Cold Storage, Inc. v. State Highways & Transp. Comm'n,* 23 S.W.3d 651, 653 (Mo.App. W.D.2000). Our review is limited to determining whether the Commission's decision was supported by substantial and competent evidence; whether its decision was arbitrary, capricious or unreasonable; or whether the Commission abused its discretion. *Id.*

23 C.F.R. § 750.707(d)(5) (1987) provides that " '[r]easonable repair and maintenance of the sign ... is not a change which would terminate nonconforming rights,' " and that " '[e]ach State shall develop its own criteria to determine when customary maintenance ceases and a substantial change has occurred which would terminate nonconforming rights.' " *Independent Stave Co. v. Missouri Highway & Transp. Comm'n,* 748 S.W.2d 870, 875 (Mo.App. S.D.1988) (quoting *23 C.F.R. § 750.707(d)(5)* (1987)). "Pursuant to the foregoing federal authority, and § 226.530,

RSMo 1978, [the Commission] adopted rules 7 CSR 10–6.060, et seq., relating to nonconforming signs." *Boyce Indus., Inc. v. Missouri Highway & Transp. Comm'n,* 693 S.W.2d 293, 294 (Mo.App. W.D.1985).

■ In rendering its decision, the Commission determined that Appellant had violated 7 CSR 10–6.060(3), the Missouri regulation related to the repair and maintenance of nonconforming signs. "Regulation 7 CSR 10–6.060(3) provides that reasonable maintenance and repair of nonconforming signs is permissible but that violations of certain subsections of the rule disqualifies the signs from being maintained as nonconforming, and subjects them to the penalty of removal."[4] *Icehouse Cold Storage, Inc.,* 23 S.W.3d at 654. In ordering the removal of Appellant's sign, the Commission relied on subsection (D), which prohibits the repair of a "deteriorated or damaged nonconforming sign." Under that subsection, if a nonconforming sign reaches the point where it is "deteriorated or damaged," the sign owner is no longer allowed to main-

---

4. 7 CSR 10–6.060(3) provides:
   Criteria for Maintenance of Nonconforming Signs. Reasonable maintenance and repair of nonconforming signs is permissible however, violation of any one (1) or more of the following subsections (3)(A)-(E) of this rule disqualifies any sign from being maintained as a nonconforming sign and subjects it to removal by the commission without the payment of just compensation:
   (A) Message Content. Changes of advertising message content are permissible ...
   (B) Type of Materials. The type of materials used in the construction of a sign shall not be changed after the date the sign becomes a nonconforming sign ...
   (C) Size. The size or area of a sign shall not be increased after the date the sign becomes a nonconforming sign....
   (D) Relocation or Repair of Nonconforming Signs. Relocation of a nonconforming sign or repair of a deteriorated or damaged nonconforming sign is a new

   erection as of the date the relocation or repair is completed and these signs must then comply with the then effective sizing, lighting, spacing, location and permit requirements of sections 226.500–226.600, RSMo. Relocation of a nonconforming sign or repair of a deteriorated or damaged nonconforming sign voids any permit issued by the commission for the sign and the fee shall be retained by the commission.
   (1) Repair of any deteriorated or damaged nonconforming sign after the date the sign becomes a nonconforming sign is prohibited. A deteriorated or damaged nonconforming sign is a sign which needs or requires the replacement of fifty percent (50%) or more of the poles or vertical supports. A nonconforming sign which has only a deteriorated or damaged face shall not constitute a deteriorated or damaged nonconforming sign ...

tain or repair the sign. "A deteriorated or damaged nonconforming sign is a sign which needs or requires the replacement of fifty percent (50%) or more of the poles or vertical supports." *7 CSR 10-6.060(3)(D)(1)*.

In its final decision and order, the Commission found that Appellant violated 7 CSR 10-6.060(3)(D)(1) by repairing the sign because the sign "was damaged so to need or require the replacement of fifty percent (50%) or more of the poles or vertical supports after October, 1998." Appellant argues that this finding is not supported by substantial and competent evidence.

█ The Commission's decision must be supported by competent and substantial evidence upon the record as a whole. *7 CSR 10-6.090(12)*. The Commission contends that evidence that four of the seven poles were in fact replaced is sufficient, in and of itself, to support its finding that fifty percent or more of the poles "needed" to be replaced. According to the Commission, "it is clear that since the four (4) poles were replaced, they 'needed' to be replaced." The Commission does not point to any other evidence that would support its finding, and our review of the record has not revealed any further support for the Commission's decision.

The only evidence presented by the Commission at the hearing regarding the condition of the sign was the testimony of Ms. Musick, her letter to Appellant, and pictures of the sign before and after the repairs. The picture showing the sign with three of its seven poles blown over and four standing does not support a conclusion that more than three poles needed to be replaced. Likewise, the picture of the sign with four new poles does not establish that the fourth pole needed to be replaced. Without anything more, the Commission could not reasonably infer from the existence of a fourth new pole that the fourth old pole "needed" to be replaced.

Furthermore, the Commission's inference that the replacement of the fourth pole was "needed" or "required" is not supported by the remaining evidence or the testimony of its only witness, Ms. Musick, the sign inspector for the Department of Transportation. Neither Ms. Musick's letter nor her testimony support a conclusion that more than three of the poles needed to be replaced. In fact, both her testimony and the letter to Appellant reflect that Ms. Musick had determined upon inspection of the sign that only three of the poles needed to be replaced. In her letter to Appellant, Ms. Musick, on behalf of the Missouri Department of Transportation, told Appellant that the "sign is a nonconforming sign, however since less than 50% was damaged, you are allowed to repair it." Ms. Musick testified at the hearing that she thought the sign became nonconforming simply because more than fifty-percent of the poles had been replaced, and she offered no opinion as to whether there had been any need to replace the fourth pole.

Similarly, the evidence presented at the hearing by Appellant did not provide any support for the Commission's conclusion. Appellant presented testimony of its general manager, Bill Silver, that he had hired Mr. Smithe and asked him to replace the three poles that were knocked over by the storm. Mr. Silver testified that Appellant did not find out that four of the poles had been replaced until after Mr. Smithe had finished working on the sign. Mr. Silver also testified that the fourth pole was not even required to hold up the sign. This testimony indicates that Appellant did not think that more than three poles needed to be replaced.

In short, the Commission's finding that the sign had reached a point where fifty-percent or more of its poles "needed" or were "required" to be replaced is not supported by substantial and competent evidence on the record as a whole. Furthermore, we find it wholly unreasonable for the Commission to find that a sign is "deteriorated or damaged" where a sign inspector for the Department of Transportation has affirmatively represented to the sign owner that the sign was less than fifty-percent damaged and that the owner was allowed to repair it. "While we recognize that the courts have applied this law very strictly, '[l]aw should reflect common sense. The Commission's position in this case does not. We need not let our fear of losing so-called federal dollars override a basic sense of fair play and good judgment.'" *Royal Food Sys., Inc. v. Missouri Highway & Transp. Comm'n*, 876 S.W.2d 38, 41 (Mo.App. E.D.1994) (quoting *Roberts v. Missouri Highway & Transp. Comm'n*, 741 S.W.2d 815, 819 (Mo.App. S.D.1987)).

The judgment of the trial court is reversed and the case is remanded with directions that a judgment be entered directing the Commission to rescind its Notice to Terminate and its order that Appellant's sign be removed.

All concur.